794 So.2d 625 (2001)
Rolando VILLAZON, etc., Appellant,
v.
PRUDENTIAL HEALTH CARE PLAN, INC., Appellee.
No. 3D00-1509.
District Court of Appeal of Florida, Third District.
March 14, 2001.
Rehearing and Rehearing Denied May 23, 2001.
Deutsch & Blumberg, and James C. Blecke, Miami, for appellant.
*626 Steven M. Ziegler, Hollywood, and Diane H. Tutt, Plantation, for appellee.
Before SCHWARTZ, C.J., and LEVY, and RAMIREZ, JJ.
Rehearing and Rehearing En Banc Denied May 23, 2001.
RAMIREZ, J.
Rolando Villazon, plaintiff below, appeals the entry of an adverse summary judgment in a wrongful death action filed against his deceased wife's health care provider, appellee Prudential Health Care Plan, Inc. Because the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1144(a), preempts Villazon's claim, we affirm.
Villazon's late wife, Susan Villazon, was a member of Prudential Health through her employer. Prudential Health is a federally qualified and state licensed independent practice associated health maintenance organization (IPA HMO). During treatment for a certain mouth ailment, her condition was misdiagnosed, and the existing cancerous condition went untreated. She eventually died of tongue cancer.
Mr. Villazon brought a wrongful death action against Drs. Melvyn Sarnow, Harvey S. Satz, and Basilio Garcia-Selleck in which he raised negligence claims, as well as against Prudential Health, in which he raised claims of vicarious liability and breach of a non-delegable duty, directly relating to the manner in which Prudential Health had administered the health plan. The actions against Drs. Satz and Garcia-Selleck were settled and the only claims that remain are against Dr. Sarnow and Prudential Health. Dr. Sarnow was the Primary Care Physician, as well the Participating Health Care Provider.
Villazon's theories of liability against Prudential Health are premised on Prudential Health's administration of the health plan through which Prudential Health influenced the manner in which the contracted health care providers rendered care and treatment. In his complaint, Villazon specifically alleged that Prudential Health breached a non-delegable duty to provide comprehensive health care, and was vicariously liable for the negligence of its contracted health care providers. Villazon argues that Prudential Health care controlled the referral process and required that authorization be obtained prior to the performance of diagnostic and therapeutic procedures. Prudential Health also required that the contracted physicians adhere to rules and seek approval for diagnostic tests. Physicians had to provide and arrange health care services through Prudential Health and refer subscribers to contracted providers. Villazon, however, does not allege that his wife was denied proper medical testing and referrals to specialists.
Prudential Health filed a motion for summary judgment asserting that eleven of the claims filed against them were preempted by section 1144(a) of ERISA, as a matter of law, because all of the claims sought to hold Prudential Health liable by challenging the administration of the health plan, and because Villazon could not prevail on any theories of liability as a matter of state law. At the summary judgment hearing, Villazon attacked the administration of the health plan and argued that Prudential Health was liable because they limited subscribers' access to certain physicians, required treatment to be pre-approved by a medical director, and required physicians to comply with directives and guidelines created by Prudential Health.
The trial court entered summary judgment in favor of Prudential Health holding that ERISA governed the claims filed against Prudential Health because the claims related to the manner in which Prudential Health administered its health care *627 plans, and further, that there were no issues of fact as to the theory of vicarious liability or any recognizable cause of action for breach of a non-delegable duty against Prudential Health under state law. We agree.
Under section 1144(a), "the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). If a claim relates to the manner in which the ERISA plan is administered, ERISA preempts the claim. See Estate of Frappier v. Wishnov, 678 So.2d 884 (Fla. 4th DCA 1996); see also Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1493 (7th Cir.1996)(holding that vicarious liability claims were preempted by ERISA because any agency relationship was based on the benefit plan and would require an examination of the plan to determine that relationship).
In Estate of Frappier, supra, the plaintiff's estate sued two doctors and a health maintenance organization alleging that the organization had a statutory and common law duty to provide appropriate medical care. The court held that the allegations related to the administration of the plan and were thus preempted by ERISA. Id. at 887. In Jass, supra, the plaintiff brought a vicarious liability claim against a health maintenance organization based on a doctor's negligent failure to provide treatment. The court held that the alleged negligence claim related to the benefit plan because the failure to provide treatment stemmed from a denial of authorization for the medical procedure. Id. at 1495.
In this case, Villazon's negligence and vicarious liability claims are based upon allegations which require a review of the health plan and its benefits in order to determine the relationship between Prudential Health and Dr. Sarnow. Villazon alleges that Prudential Health had a nondelegable duty that could not be assigned to its medical providers and that Prudential Health limited Susan Villazon's access to health care by requiring referrals to contracted providers. At the summary judgment hearing, Villazon argued that Prudential Health, as part of the management of health care benefits, decides who provides the benefits, when those benefits are provided, where the benefits are provided, and why those benefits need to be provided. Villazon also alleges that Prudential Health controlled the referral process, and required that authorization be obtained prior to the performance of certain tests and procedures. These claims thus directly relate to the health plan as they arise from the denial of medical care and treatment benefits.
Furthermore, to hold that ERISA does not preempt this action would be contrary to Congress' intent when it enacted ERISA. Congress intended to create a single standard in the manner in which health care benefits were to be administered. See Shaw v. Delta Air Lines, 463 U.S. 85, 95, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); see also Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).
Villazon also raised the issue that Prudential Health had a non-delegable duty to render proper medical care to his wife, and that Prudential Health is vicariously liable for the negligence of the physicians involved. The uncontroverted evidence, however, establishes that all medical providers were independent contractors. As an IPA HMO, Prudential Health entered into contracts with physicians who had their own independent practices and who agreed to provide covered *628 services for a contracted rate. Dr. Sarnow was an independent contractor who had his own private practice and agreed to render services to Prudential Health subscribers pursuant to a Primary Care Physician Agreement. Dr. Sarnow continued his independent practice after he entered into this agreement. Susan Villazon had selected Dr. Sarnow as her treating physician before she became a member of Prudential Health.
Villazon argues that Prudential Health assumed a non-delegable duty to render medical care to his wife in a non-negligent manner when she purchased health care coverage from Prudential Health. However, Villazon does not cite any support for this proposition. In fact, Prudential Health never contracted with Villazon's wife to render any medical services, and only contracted to provide such care through the use of its primary care physicians and participating health care providers.
Additionally, "[t]he existence of a clear and unambiguous contract is the best evidence of the intent of the parties, and its meaning and legal effect are questions of law for determination by the court." Jaar v. University of Miami, 474 So.2d 239, 242 (Fla. 3d DCA 1985). Here, all the contractual provisions clearly designated the physicians as independent contractors. There is no evidence on this record that Prudential Health exercised any control over the medical judgments and decisions made in the care and treatment of patients, including Villazon's wife.
For these reasons, therefore, the trial court did not err in entering summary final judgment in Prudential Health's favor.
Affirmed.