843 So.2d 842 (2003)
Rolando VILLAZON, etc., Petitioner,
v.
PRUDENTIAL HEALTH CARE PLAN, INC., Respondent.
No. SC01-1397.
Supreme Court of Florida.
March 27, 2003.
*844 James C. Blecke of Deutsch & Blumberg, P.A., Miami, FL, for Petitioner.
Steven M. Ziegler and Andres Gonzalez of the Law Offices of Steven M. Ziegler, P.A., Hollywood, FL, for Respondent.
David J. Sales and Searcy Denney Scarola of Barnhart & Shipley, West Palm Beach, FL, for the Academy of Florida Trial Lawyers, Amicus Curiae.
Louise H. McMurray of McIntosh, Sawran, Peltz & Cartaya, P.A., Miami, FL, for the Florida Association of Health Plans, Amicus Curiae.
Joel L. Michaels, Barbara W. Mayers, and Robin J. Bowen of McDermott, Will & Emery, Washington, DC, for the American Association of Health Plans, Amicus Curiae.
LEWIS, J.
We have for review Villazon v. Prudential Health Care Plan, Inc., 794 So.2d 625 (Fla. 3d DCA 2001), which expressly and directly conflicts with the decision in In re Estate of Frappier, 678 So.2d 884 (Fla. 4th DCA 1996). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

MATERIAL FACTS AND PROCEEDINGS BELOW
Petitioner Rolando Villazon, personal representative of the estate of his deceased wife, Susan Villazon, seeks review of the decision of the Third District Court of Appeal affirming the trial court's summary judgment in favor of Prudential Health Care Plan, Inc., (PruCare) in Petitioner's action against PruCare for the wrongful death of his wife. Through her employer, Susan Villazon became a member of PruCare, a health maintenance organization. After having a mouth ailment allegedly misdiagnosed or mistreated, Mrs. Villazon died as a result of an untreated cancerous tongue condition.
Villazon filed an action for wrongful death based on negligence against Mrs. Villazon's primary care physician, Dr. Melvyn Sarnow,[1] and against her health care provider, respondent PruCare. In Count VI of his amended complaint, Villazon alleged the basis for PruCare's vicarious liability and breach of a nondelegable duty to be:
94. The Defendant, PRUDENTIAL HEALTH CARE PLAN, INC. is a health maintenance organization doing business in Dade County Florida as defined by and governed by Section 641.17 et seq., Florida Statutes; Chapter 4-31, Florida Administrative Code; 42 U.S.C. Section 300(e); and 42 C.F.R. Part 417.
95. SUSAN COHEN VILLAZON was a PRUDENTIAL HEALTH CARE PLAN, INC. subscriber under a health maintenance contract by which PRUDENTIAL HEALTH CARE PLAN, INC. agreed to provide SUSAN COHEN VILLAZON with comprehensive health care services.

*845 96. By statute, rule, and contract, the Defendant, PRUDENTIAL HEALTH CARE PLAN, INC., had the non-delegable duty to provide SUSAN COHEN VILLAZON with quality health care including without limitation, in-patient hospital services, and medical, surgical, diagnostic, x-ray, laboratory, nursing, physical therapy, and pharmaceutical services.
97. The Defendant, PRUDENTIAL HEALTH CARE PLAN, INC., contracted with Melvyn Sarnow, D.O., Basilio Garcia-Sellek, D.O. and Harvey S. Satz, D.M.D., to provide SUSAN COHEN VILLAZON with health care services, and PRUDENTIAL HEALTH CARE PLAN, INC. is responsible for any and all negligence of Melvyn Sarnow, D.O., Basilio Garcia-Sellek, D.O. and Harvey S. Satz, D.M.D. in the rendering [or] failure to render health care to SUSAN COHEN VILLAZON, as more specifically set forth herein.
98. The Defendant, PRUDENTIAL HEALTH CARE PLAN, INC. as set forth herein breached its duty to provide quality health care to SUSAN COHEN VILLAZON, resulting in her death.
99. As a result of the acts and conduct of the Defendant, PRUDENTIAL HEALTH CARE PLAN, INC., by and through its agents, apparent agents, employees, SUSAN COHEN VILLAZON sustained injury and ultimately died on February 9, 1997.
(Emphasis supplied.) As set forth in the Third District's opinion:
Villazon argues that Prudential Health care controlled the referral process and required that authorization be obtained prior to the performance of diagnostic and therapeutic procedures. Prudential Health also required that the contracted physicians adhere to rules and seek approval for diagnostic tests. Physicians had to provide and arrange health care services through Prudential Health and refer subscribers to contracted providers. Villazon, however, does not allege that his wife was denied proper medical testing and referrals to specialists.
Villazon, 794 So.2d at 626.
PruCare filed a motion for summary judgment, asserting that the claims filed against it were preempted by section 514(a) of the Employee Retirement Income Security Act (ERISA),[2] and that Villazon could not prevail on those claims as a matter of state law. The trial court entered summary final judgment in favor of PruCare, holding that "ERISA governed the claims filed against [PruCare] because they related to the manner in which [PruCare] administered its health care plans, and further, that there were no issues of fact as to the theory of vicarious liability or any recognizable cause of action for breach of a non-delegable duty against [PruCare] under state law." Villazon, 794 So.2d at 626-27. On appeal, the district court agreed. Id. at 627.
In addressing the state law issues, the Third District rejected Villazon's position and reasoned that the medical providers were independent contractors because as an independent practice associated health maintenance organization (IPA HMO), PruCare entered into contracts with physicians who had their own independent practices and who agreed to provide covered services for a contracted rate. The district court highlighted that Dr. Sarnow was an independent contractor who had his own private practice and agreed to *846 render services to PruCare subscribers pursuant to a Primary Care Physician Agreement, continuing his own independent practice after he entered into this agreement.
In rejecting Villazon's argument that PruCare had assumed a nondelegable duty to render medical care to his wife in a nonnegligent manner when she purchased health care coverage from PruCare, the court noted that Villazon had not cited any support for this proposition. The court looked only to the contract between PruCare and the physicians and reasoned that it was the best evidence of the intent of the parties, and its meaning and legal effect were questions of law for determination by the court. It was important to the court below that the contractual provisions designated physicians as independent contractors, and the court found no evidence of control upon which to justify imposing responsibility on PruCare. Villazon, 794 So.2d at 627-28. In focusing solely on the one contract that attempted to designate physicians as independent contractors and also limiting its vision to the issue of actual control, the Third District's decision is also in conflict with Nazworth v. Swire Florida, Inc., 486 So.2d 637 (Fla. 1st DCA 1986), which demonstrates that it is the right to control, not the actual control, that may be determinative.

ERISA PREEMPTION
As did the district courts in Villazon and Frappier, we begin our legal analysis by determining the threshold issue of ERISA preemption. Villazon correctly cites Frappier for the proposition that "[i]f a claim relates to the manner in which the ERISA plan is administered, ERISA preempts the claim." Villazon, 794 So.2d at 627; see also Frappier, 678 So.2d at 887 ("Concerning the direct negligence, corporate liability and implied contract claims, we concur with the lower court's decision that these allegations would be completely preempted because they present issues unequivocally related to the administration of the plan and are within the scope of section 502(a)(1)(B).") (emphasis supplied).
However, Villazon directly conflicts with Frappier in its determination of whether a state law wrongful death claim by a deceased patient member's estate against a health maintenance organization (HMO) based upon vicarious liability for asserted medical malpractice of its member physicians "relates to" administration of the ERISA plan and is therefore preempted.[3] In Villazon, the district court below incorrectly concluded that it did. See Villazon, 794 So.2d at 627 (determining that Villazon's claims "directly relate to the health plan as they arise from the denial of medical care and treatment benefits"). In Frappier, in contrast, the district court correctly determined that ERISA does not preempt such vicarious liability claims.[4]
*847 In Frappier, the decedent's estate filed an action against Health Options, Inc., an HMO, and the two Health Options physicians who had provided medical care to Frappier, asserting that medical malpractice had occurred. The trial court had dismissed Frappier's complaint with prejudice. Frappier, 678 So.2d at 885.
The appellate court remanded the case to the trial court to determine whether an ERISA plan ever existed, agreeing that "this threshold question must be resolved prior to addressing the issue of whether the dismissed counts are preemptable." Id. Nevertheless, the district court was "compelled to address the merits of the trial court's determination that the estate's claims against Health Options are preempted by the federal ERISA statute." Id. at 886. Nor was this exercise simply gratuitous, as reflected in the district court's directive to the trial court, in remanding the case: "Upon an appropriate finding, the trial court may dismiss the estate's direct negligence, corporate liability and implied contract claims for a lack of subject matter jurisdiction. However, in no event may the vicarious liability count be dismissed as the same does not `relate to' an employee benefit plan." Id. at 888 (emphasis supplied).
Because no Florida case had yet addressed whether direct negligence or vicarious liability claims against an entity involved in an ERISA plan are preempted, the Fourth District found guidance from decisions rendered by federal courts. It first framed the inquiry pursuant to section 514(a) of ERISA:
The ERISA regulatory scheme was promulgated to entrench as exclusively a federal matter pension plan legislation. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The governing provision of ERISA relevant to this discussion is section 514(a) which provides that "this Chapter shall supersede any and all state laws insofar as they may now or hereafter `relate to' any employee benefit plan." 29 U.S.C. § 1144(a).
Properly phrased, the issue becomes whether Frappier's claims against Health Options as delineated in counts III-VI of the complaint are to recover plan benefits due, or to enforce rights, or to clarify rights to benefits under the terms of the plan, as those concepts are detailed in section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). Although Pilot Life suggested an expansive interpretation of the triggering jurisdictional clause of the ERISA federal regulatory scheme, the United States Supreme Court in New York Blue Cross v. Travelers Ins., 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), and several more recent lower federal court decisions caution against a literal reading of section 514(a) in determining whether preemption is appropriate. New York Blue Cross directs that in construing the "relate to" phrase of section 514(a), trial courts must analyze the objectives of the ERISA statute to resolve which state laws Congress contemplated would continue to survive the ambit of federal regulation. Id. at 656, 115 S.Ct. at 1677. In other words, statutory or common law claims actionable in state court that are periphery or remotely related to competing laws affecting ERISA should not be preempted to federal court. Shaw v. Delta Air Lines, Inc., 463 U.S. *848 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).
Frappier, 678 So.2d at 886-87. In deciding that ERISA did not preempt Frappier's vicarious liability claim, the district court made a key distinction between causes of action based upon an HMO having administratively withheld benefits from its member patient and those based upon the quality of HMO benefits actually provided:
In its appellate decision, the Dukes[5] court drew the distinction between a lawsuit against an ERISA claiming the withholding of benefits and a claim initiated by Dukes which attacked the quality of benefits provided by the HMO. Id. at 357. As the court explained:
[T]he plaintiff's claims, even when construed as U.S. Healthcare suggests, merely attack the quality of the benefits they received: The plaintiffs here simply do not claim that the plans erroneously withheld benefits due. Nor do they ask the state courts to enforce their rights under the terms of their respective plans or to clarify their rights to future benefits. As a result, the plaintiffs' claims fall outside of the scope of § 502(a)(1)(B) and these cases must be remanded to the state courts from which they were removed.

Id. at 356. Accordingly, Dukes considered and rejected the line of cases cited and relied upon by the lower court in determining that ERISA preempts the instant vicarious liability claim. We agree with the factual dichotomy expressed in Dukes that is critical for this analysis:
[T]here is no allegation here that the HMOs denied anyone any benefits that were due under the plan. Instead the plaintiffs here are attempting to hold the HMOs liable for their role as the arrangers of their decedents' medical treatment.
Id. at 361.
Thus where, as here, an ERISA is implicated by a complaint for failing to provide, arrange for, or supervise qualified doctors to provide the actual medical treatment for plan participants, federal preemption is inappropriate. See Independence HMO, Inc. v. Smith, 733 F.Supp. 983, 987-89 (E.D.Pa.1990); Elsesser v. Hospital of the Philadelphia College of Osteopathic Medicine, 802 F.Supp. 1286, 1290-1291 (E.D.Pa.1992); Kearney v. U.S. Healthcare, Inc., 859 F.Supp. 182, 186-87 (E.D.Pa.1994); Dearmas v. Av-Med, Inc., 865 F.Supp. 816 (S.D.Fla.1994); Paterno v. Albuerne, 855 F.Supp. 1263 (S.D.Fla.1994); Burke v. Smithkline Bio-Science Lab., 858 F.Supp. 1181 (M.D.Fla.1994); Rice v. Panchal, 65 F.3d 637 (7th Cir.1995); Pacificare of Oklahoma v. Burrage, 59 F.3d 151 (10th Cir.1995). Therefore, even if Health Options is an ERISA subject to federal preemption, we must conclude that the trial court erred in dismissing the vicarious liability count of the instant complaint.
Frappier, 678 So.2d at 887. We conclude that this ERISA preemption discussion is a correct interpretation as applied to state law causes of action against HMOs based upon allegations of direct and vicarious liability for negligence in the provision of medical services to member patients. See also In re U.S. Healthcare, Inc., 193 F.3d 151, 162-63 (3d Cir.1999) (claims against HMOs for vicarious liability based upon medical negligence of its physicians are not preempted by ERISA); Dukes, 57 F.3d at 356-58 (same); Rice v. Panchal, 65 F.3d 637, 645 (7th Cir.1995) (same); Pacificare *849 of Oklahoma, Inc. v. Burrage, 59 F.3d 151, 155 (10th Cir.1995) (same); Paterno v. Albuerne, 855 F.Supp. 1263, 1264 (S.D.Fla.1994) (same); Hinterlong, 241 Ill. Dec. at 870, 720 N.E.2d at 325 (same); Pappas v. Asbel, 564 Pa. 407, 768 A.2d 1089, 1095-96 (2001) (same), cert. denied, 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002) (Pappas II).
A similar analysis was employed by the Pennsylvania Supreme Court in Pappas II upon remand from the United States Supreme Court. In Pappas v. Asbel, 555 Pa. 342, 724 A.2d 889 (1998) (Pappas I), the Pennsylvania Supreme Court had originally held that the plaintiff's claim for vicarious liability against the HMO was not preempted by ERISA. See id. at 893. Upon appeal to the United States Supreme Court, the case was remanded to the Pennsylvania Supreme Court for reconsideration in light of Pegram v. Herdrich, 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000).[6] In applying the reasoning in Pegram, the Pappas II court again determined that the plaintiff's claim was not subject to conflict preemption under ERISA:
We now turn, as instructed by the Supreme Court, to a reconsideration of our decision in Pappas I in light of Pegram. ...
. . . .
The Court [in Pegram] ... held that Congress did not intend that any HMO be treated as an ERISA fiduciary to the extent that it makes mixed eligibility and treatment decisions acting through its physicians. Id. at 2155. [Note 4] Observing that under the common law of trusts, which is the source of ERISA's fiduciary duties, fiduciary responsibility characteristically attaches to financial decisions about managing assets and property, the Court doubted that Congress would have ever thought of a mixed decision as fiduciary in nature. Id. at 2155-56. Because the defense of any HMO of a mixed decision would be that its physician acted for good medical reasons, the plausibility of which would require reference to traditional standards of reasonable medical practice in like circumstances, the Court was concerned that a decision to view a mixed decision as an act of ERISA fiduciary duty would "federalize malpractice litigation". Id. at 2157-58. Lastly, the Court touched upon (but declined to resolve) the "puzzling issue of preemption" that would be raised by the imposition of ERISA's fiduciary requirements upon an HMO physician making a pure treatment or mixed decision, in view of its holding in Travelers:

On its face, federal fiduciary law applying a malpractice standard would seem to be a prescription for preemption of state malpractice law, since the new ERISA cause of action would cover the same subject of a state-law malpractice claim.... To be sure, [Travelers ] throws some cold water in the preemption theory; there, we held that, in the field of health care, a subject of traditional state regulation, there is no ERISA preemption without clear manifestation of congressional purpose. But in that case the convergence of state and federal law was not so clear as in the situation we are positing; the state-law standard had not been subsumed by the standard to be applied under ERISA. We could struggle with this problem, but first it is well to ask, again, what would be gained by opening the federal courthouse *850 doors to a fiduciary malpractice claim....

Pegram, at 2158 (citations omitted).
[Note 4] The HMO in Pegram was owned by its physicians. U.S. Healthcare contracts with independent physicians to provide services. Pegram's result was based on the nature of the HMO's decision, not on the structure of the HMO making it. Pegram, 530 U.S. at 230-31, 120 S.Ct. at 2155. Further, the Supreme Court's holding was all-inclusive as to HMOs. Id. Thus, the difference in organization between the HMO in Pegram and U.S. Healthcare is not relevant to this analysis.
While Travelers and Pegram deal with different aspects of ERISA, for our present purposes, they share common ground. Travelers instructs that ERISA does not preempt state law that regulates the provision of adequate medical treatment. Pegram instructs that an HMO's mixed eligibility and treatment decision implicates a state law claim for medical malpractice, not an ERISA cause of action for fiduciary breach. Thus, if Haverford's third party claim against U.S. Healthcare arose out of a mixed decision, it is, according to Pegram, subject to state medical malpractice law, which is what Haverford asserted. Moreover, under Travelers, it is not preempted by ERISA.
. . . .
Not surprisingly, U.S. Healthcare argues that its decision about Pappas' referral "constituted a quintessential `coverage' determination". We, however, disagree. In our view, the undisputed facts in this case, and the inferences drawn from them, establish the sort of mixed eligibility and treatment decision that Pegram discussed. Dr. Leibowitz, U.S. Healthcare's physician, reviewed Pappas' case, and rejected another medical doctor's opinion based on his clinical judgment that Pappas needed to be referred to Jefferson for treatment of a medical emergency. Instead of referring Pappas to Jefferson, a non-HMO hospital, as Dr. Dickter recommended, Dr. Leibowitz referred Pappas to one of three other facilities for medical care. He did not, in the Supreme Court's words, only make a "simple yes or no" decision as to whether Pappas' condition was covered; it clearly was. Rather, Dr. Leibowitz also determined where and, under the circumstances, when Pappas' epidermal abscess would be treated. His was a mixed eligibility and treatment decision, the adverse consequences of which, if any, are properly redressed, as Pegram teaches, through state medical malpractice law. This law as Travelers teaches, is not preempted by ERISA.
Pappas II, 768 A.2d at 1093-96 (some footnotes omitted).
The Second Circuit's recent interpretation of the United States Supreme Court's decision in Pegram also has application here. In Cicio v. Does, 321 F.3d 83 (2d Cir.2003), the circuit court held that "a state law malpractice action, if based on a `mixed eligibility and treatment decision,' is not subject to ERISA preemption when that state law cause of action challenges an allegedly flawed medical judgment as applied to a specific patient's symptoms." Id. at 102. The court's decision correctly recognizes that HMO plan administration is often inextricably intertwined with treatment decisions, and that ERISA does not preempt viable state law causes of action arising from such decisions. The Cicio decision is consistent with and reflective of the current state of the law in Florida.
Here, Villazon bases his vicarious liability claim against PruCare on allegations that agents or apparent agents of *851 PruCare made negligent treatment decisions in caring for Mrs. Villazon.[7] As the Pappas II court correctly observed, "Travelers instructs that ERISA does not preempt state law that regulates the provision of adequate medical treatment." Pappas II, 768 A.2d at 1095; see also Frappier, 678 So.2d at 886 (recognizing that the United States Supreme Court in Travelers and "several more recent lower federal court decisions caution against a literal reading of section 514(a) in determining whether preemption is appropriate").
Therefore, applying the analysis employed in Frappier and Pappas II, we conclude that Villazon's complaint for vicarious liabilitywhich was clearly based upon allegations of negligent failure to provide adequate medical treatment for his wife's canceris not subject to ERISA conflict preemption. See also Lancaster v. Kaiser Found. Health Plan of Mid-Atlantic States, Inc., 958 F.Supp. 1137, 1150 & n. 46 (E.D.Va.1997) (citing Pacificare, 59 F.3d at 155) ("We agree with the district court that reference to the plan to resolve the agency issue does not implicate the concerns of ERISA preemption."); Jackson v. Roseman, 878 F.Supp. 820, 826 (D.Md.1995) ("As for a determination of an HMO's vicarious liability, the court correctly opined that reference to the plan, if any, will be necessary only for proving matters of agency, not for wrongful plan administration or of the withholding of promised benefits."); Haas v. Group Health Plan, Inc., 875 F.Supp. 544, 549 (S.D.Ill.1994) ("The mere fact that a claim requires examination of a plan to resolve a contractual issue does not alone justify preemption."); Kearney v. U.S. Healthcare, Inc., 859 F.Supp. 182, 186 (E.D.Pa. 1994) ("That one may refer to the contents of a plan to adduce evidence that it held out a particular person as its employee or agent to help sustain a cause of action does not implicate the concerns underlying the ERISA preemption provision.").[8] Accordingly, we approve the preemption analysis in Frappier, and quash the decision in Villazon to the extent of inconsistency with our opinion here.

VICARIOUS LIABILITY
Turning now to the state law issue, there are multiple different theories upon which vicarious liability was sought *852 to be imposed: a nondelegable duty under the HMO Act; common law actual agency; and common law apparent agency. We agree with the district court's rejection of Villazon's argument that PruCare "assumed a non-delegable duty to render medical care to his wife in a non-negligent manner when she purchased health care coverage from Prudential Health." Villazon, 794 So.2d at 628. Villazon argues that such nondelegable duty arises under the "Health Maintenance Organization Act," sections 641.17-641.3923, Florida Statutes (2000) (the "Act").[9] The Act does not specifically provide a private right of action for damages based upon an alleged violation of its requirements. Cf. Greene v. Well Care HMO, Inc., 778 So.2d 1037, 1040 (Fla. 4th DCA 2001) (holding that the Act, which provides for attorney's fees "[i]n any civil action brought to enforce the terms and conditions of a health maintenance organization contract" does not provide for attorney's fees in a civil action based upon a bad faith breach of contract claim). There are other regulatory statutes in which the legislature has specifically created a private right of action. In the nursing home statute, for example, the legislature created a nursing home resident's "right to receive adequate and appropriate health care," see § 400.022(1)(l), Fla. Stat. (1997), and a concomitant private right of action for deprivation of a resident's statutory rights. See § 400.023(1), Fla. Stat. (1997); Somberg v. Florida Convalescent Ctrs., Inc., 779 So.2d 667, 668 (Fla. 3d DCA 2001), approved, 840 So.2d 998 (Fla.2003). Absent such expression of intent, a private right of action is not implied. Cf. Murthy v. N. Sinha Corp., 644 So.2d 983, 986 (Fla.1994) ("In general, a statute that does not purport to establish civil liability but merely makes provision to secure the safety or welfare of the public as an entity, will not be construed as establishing a civil liability.") (quoting Moyant v. Beattie, 561 So.2d 1319, 1320 (Fla. 4th DCA 1990)).
This does not, however, preclude the right to bring a common law negligence claim based upon the same allegations. See Greene, 778 So.2d at 1042 (holding that the plaintiffs should be "given the opportunity to amend the complaint and try to state a cause of action on these common law claims" based upon Well Care's alleged negligent failure to authorize medically necessary services "before the court rules that [no such cause of action] exists in relation to Well Care"). Further, contrary to the district court's decision below, we conclude that here, at the summary judgment level, it has not been conclusively established that there are no genuine issues of material fact with regard to the motion for summary judgment concerning Villazon's common law negligence claim based upon allegations that Mrs. Villazon's treating physicians were agents or apparent agents of Pru-Care. Cf. Lewis v. Central Okla. Med. Group, Inc., 998 P.2d 202, 205-06 (Okla.Ct. App.1999) (holding that the disputed agency issue must be determined by the trier of fact where the plaintiff had produced sufficient evidence of agency to defeat the defendant HMO's summary judgment motion, even though the HMO's certificate of group health coverage expressly provided *853 that the decedent's physicians were independent contractors).
The existence of an agency relationship is normally one for the trier of fact to decide. See Orlando Executive Park, Inc. v. Robbins, 433 So.2d 491, 494 (Fla.1983). In reviewing a judgment entered pursuant to a motion for summary judgment, reasonable inferences should be resolved against the movant. See Moore v. Morris, 475 So.2d 666, 668 (Fla.1985); Wills v. Sears, Roebuck & Co., 351 So.2d 29, 32 (Fla.1977). "[A] judgment should not be rendered in such proceedings unless the facts are so crystallized that nothing remains but questions of law." Shaffran v. Holness, 93 So.2d 94, 97-98 (Fla.1957).
Here, in affirming the trial court's summary final judgment in favor of Pru-Care on the issue of agency, the district court concluded that all medical providers were independent contractors simply because as an IPA HMO, PruCare entered into contracts with physicians who had their own independent practices and who agreed to provide covered services for a contracted rate. The district court concluded that because the contractual provisions designated the physicians as independent contractors and that there was no evidence that PruCare exercised actual control over the medical judgments and decisions made in the care and treatment of Villazon's wife, summary judgment was appropriate. Villazon, 794 So.2d at 627-28. Although the district court's view was that there was no evidence that PruCare exercised actual control over Dr. Sarnow's medical judgments in this case,[10] that, alone, is not the proper test.
When one considers an action based on actual agency, it is the right to control, rather than actual control, that may be determinative. See Nazworth v. Swire Fla., Inc., 486 So.2d 637, 638 (Fla. 1st DCA 1986) ("The standard for determining whether an agent is an independent contractor is the degree of control exercised by the employer or owner over the agent. More particularly, it is the right of control, and not actual control, which determines the relationship between the parties.").
As can be seen from decisions such as Stoll v. Noel, 694 So.2d 701 (Fla. 1997), independent contractors may indeed become agents depending on the totality of the circumstances. The degree of control retained or exercised may certainly be determined by a single contract or, as in Stoll, by reference to multiple writings, policies, or procedures that may be operative in addition to an underlying contract. See id. at 703. While an evaluation of a single contract may be a question of law to be determined by the court, when there are multiple relationships along with multiple practices and procedures to be evaluated, and the totality of the evidence is susceptible to multiple inferences and interpretations, the existence and scope of an agency relationship are generally questions of fact.
It is not uncommon for parties to include conclusory statements in documents with regard to the independence of the relationship of the parties. This may occur even when other contractual provisions and the totality of the circumstances reflect otherwise. Such a situation has caused this Court to reason:

*854 While the obvious purpose to be accomplished by this document was to evince an independent contractor status, such status depends not on the statements of the parties but upon all the circumstances of their dealings with each other.
Cantor v. Cochran, 184 So.2d 173, 174 (Fla.1966); see also Parker v. Domino's Pizza, Inc., 629 So.2d 1026, 1027 (Fla. 4th DCA 1993) (holding that the nature and extent of the relationship of parties with regard to agency presents a question of fact and is not controlled by descriptive labels employed by the parties); Nazworth, 486 So.2d at 638 (recognizing that the use of descriptive labels in a contract is not determinative of the actual legal relationship between parties). The physician's contractual independent contractor status does not alone preclude a finding of agency.[11]
Here, the record evidence reflects significant indicia of PruCare's right to control the means by which medical services were rendered by Member Physicians to Member Patients. The facts peculiar to each case must govern the ultimate disposition. While physicians of the past in the traditional pattern of American life may have constituted distinct independent entities and independent centers of occupation and profession, that model has been dramatically altered through the HMO concept in a significant manner which a legal system cannot simply ignore. The thought of visiting a private and independent office of a totally independent physician may now be one more of history and cultural conditioning than current reality. The economic structures alone may so impact the relationships that the prism through which we consider and evaluate issues of control must be honed for this current reality.
On deposition, the PruCare representative, Dominick Messano, testified regarding PruCare's relationship with the HMO network physicians. Consistent with the Certificate of Coverage, Messano indicated that PruCare determines which providers are part of the HMO network, and that HMO patient members are required to use HMO network physicians. Significantly, the Certificate of Coverage contains provisions which demonstrate PruCare's right to control important aspects of patient care provided by the HMO.
In Part I (explaining the scope of Group Health Care Coverage), the Certificate provides that PruCare "will arrange or provide for benefits for the Eligible Services and Supplies" set forth in the Certificate of Coverage. All Eligible Services and Supplies must be furnished by a Primary *855 Care Physician, another Participating Health Care Provider authorized by a Primary Care Physician, or a Non-Participating Health Care Provider authorized by a Primary Care Physician. "In addition, certain services and supplies" (such as infertility services or counseling services upon the death of a terminally ill covered person) "must be authorized by the Medical Director to be eligible."
Further, the definitions section contains these operative provisions:
(1) Covered Persons may be referred to Consulting Physicians only if "referred for care in writing by a Participating Physician," and only if such "services have been approved, in advance, by the Medical Director and confirmed in writing by the Medical Director."
(2) A "Medical Director" is defined as a "Physician who is a consultant retained by PruCare to coordinate and supervise the delivery of health care services for Covered Persons through Participating Physicians and Participating Health Care Providers."
(3) A "Participating Health Care Provider" is defined as a "Physician, Hospital or other provider of medical services or supplies which is licensed or certified in the state in which it is located and which has agreed with PruCare, directly or indirectly, to arrange or provide for furnishing services and supplies for medical care and treatment to Covered Persons."
(4) A "Primary Care Physician" is defined as a "Physician who is a Participating Health Care Provider and who is chosen by a Covered Person to have the responsibility for" providing medical services and initiating referrals to other participating health care providers.
(5) "Specialty Care Physicians" are defined as participating health care providers who provide "certain specialty medical care to Covered Persons upon referral by a Primary Care Physician, as approved by the Medical Director."
Indeed, while on the one hand, the Certificate of Coverage contains a disclaimer which states that participating hospitals and physicians have an independent contractor relationship with PruCare, on the other hand, it reflects PruCare's recognition of potential liability for its part in "mak[ing] arrangements for furnishing supplies and services to Covered Persons." This is evidenced by inclusion of a provision that "[n]either the Contract Holder nor any Covered Person under the Group Contract will be liable for any acts or omissions of PruCare, its agents or employees, or any Hospital, Physician or other health care provider with which PruCare, its agents or employees" makes such arrangements.
These contractual provisions, along with the contractual provisions between the HMO and the physicians, and the totality of the circumstances operating within the current reality of the interaction within the decision-making process, create genuine issues of material fact sufficient to withstand a motion for summary judgment with respect to the question of whether PruCare can be held vicariously liable for the alleged medical negligence of its member physicians when providing service pursuant to the PruCare health plan under theories of actual agency. PruCare has not conclusively demonstrated the absence of genuine issues of material fact.
As for the cause of action based on apparent agency, however, it must be remembered that apparent authority exists "only where the principal creates the appearance of an agency relationship." Spence, Payne, Masington & Grossman, P.A. v. Philip M. Gerson, P.A., 483 So.2d 775, 777 (Fla. 3d DCA 1986). Therefore, *856 as to the claim of apparent agency, because this issue has not been fully addressed, on remand the trial court should have the opportunity to reevaluate whether under an apparent agency theory there are genuine issues of material fact.[12]
Accordingly, we quash the decision in Villazon to the extent of inconsistency with this opinion, and remand to the district court for further proceedings in accordance herewith.
It is so ordered.
ANSTEAD, C.J., PARIENTE and QUINCE, JJ., and SHAW and HARDING, Senior Justices, concur.
WELLS, J., concurs in part and dissents in part with an opinion.
WELLS, J., concurring in part and dissenting in part.
I concur with the majority on all issues except I dissent from the quashing of the district court's summary judgment on the issue of agency. I find that the majority decision's finding of a factual basis for agency on a "right to control" theory is not in accord with the record, which demonstrates that the physician was an independent practitioner. I believe this Court should not interfere with and frustrate what this business arrangement was clearly intended to be, which was an independent physician-health care benefit administrator arrangement. I would approve the decision of the district court on this issue.
NOTES
[1] Villazon also raised negligence claims against Mrs. Villazon's other treating physicians, Dr. Harvey S. Satz and Dr. Basilio Garcia-Selleck. The actions against these doctors were settled.
[2] Pub.L. No. 93-406, 88 Stat. 832 (1974) (codified as amended at 29 U.S.C. §§ 1001-1461 (2000)).
[3] Indeed, in Hinterlong v. Baldwin, 308 Ill. App.3d 441, 241 Ill.Dec. 860, 720 N.E.2d 315 (1999), the Illinois appellate court, in addressing the same issue raised here as one of first impression under Illinois law, correctly cited (among other cases) Frappier, 678 So.2d at 887, for the proposition that, based upon the United States Supreme Court's decision in New York Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co., 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), a state law medical malpractice claim against an HMO based upon vicarious liability did not "relate to" an employee benefit plan and thus was not preempted. See Hinterlong, 241 Ill.Dec. 860, 720 N.E.2d at 322.
[4] The district court in Frappier concluded that, "even if Health Options is an ERISA subject to federal preemption," the trial court had "erred in dismissing the vicarious liability count of the instant complaint." In so doing, it rejected "outright as a distinction without substance Appellee's argument that Frappier's drafting of Count II employs language suggesting a theory of `apparent agency' as opposed to `vicarious liability.' A review of the foregoing discussed cases indicates these phrases are used interchangeably and at most, present a mere semantic rather than a legal distinction." Frappier, 678 So.2d at 887 & n. 1.
[5] Dukes v. U.S. Healthcare, Inc., 57 F.3d 350 (3d Cir.1995).
[6] Oddly, even though the Pegram decision predated the district court's decision in Villazon, the Third District did not mention Pegram in its opinion.
[7] As the Third District observed:

In his complaint, Villazon specifically alleged that Prudential Health breached a non-delegable duty to provide comprehensive health care, and was vicariously liable for the negligence of its contracted health care providers. Villazon argues that Prudential Health care controlled the referral process and required that authorization be obtained prior to the performance of diagnostic and therapeutic procedures. Prudential Health also required that the contracted physicians adhere to rules and seek approval for diagnostic tests. Physicians had to provide and arrange health care services through Prudential Health and refer subscribers to contracted providers. Villazon, however, does not allege that his wife was denied proper medical testing and referrals to specialists.
Villazon, 794 So.2d at 626.
[8] In DeBuono v. NYSA-ILA Medical & Clinical Services Fund, 520 U.S. 806, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997), the United States Supreme Court observed that, in its earlier cases, it had "noted that the literal text of § 514(a) is `clearly expansive,'" id. at 813, 117 S.Ct. 1747 (citing Travelers, 514 U.S. at 655, 115 S.Ct. 1671), and cautioned against too broad a reading of the "relate to" clause. See id. at 812-13 & n. 7, 117 S.Ct. 1747 (citing California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., 519 U.S. 316, 335, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997)) (Scalia, J., concurring) ("[A]pplying the `relate to' provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else.").
[9] Section 641.28, Florida Statutes (2002), provides:

Civil remedy.In any civil action brought to enforce the terms and conditions of a health maintenance organization contract, the prevailing party is entitled to recover reasonable attorney's fees and court costs. This section shall not be construed to authorize a civil action against the department, its employees, or the Insurance Commissioner or against the Agency for Health Care Administration, its employees, or the director of the agency.
[10] As stated by this Court in Goldschmidt v. Holman, 571 So.2d 422 (Fla.1990), "Essential to the existence of an actual agency relationship is (1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent. Restatement (Second) of Agency § 1 (1957)." Id. at 424 n. 5.
[11] In a different context, it has been observed that professionals may serve in some capacities as independent contractors, and in others (when subject to a right of control) as employees. As reflected in the Restatement:

"[I]ndependent contractor" is a term which is antithetical to the word "servant", although not to the word "agent". In fact, most of the persons known as agents, that is, brokers, factors, attorneys, collection agencies, and selling agencies are independent contractors as the term is used in the Restatement of this Subject, since they are contractors but, although employed to perform services, are not subject to the control or right to control of the principal with respect to their physical conduct in the performance of the services. However, they fall within the category of agents. They are fiduciaries; they owe to the principal the basic obligations of agency: loyalty and obedience. Some of them also fall within the category of trustee, as in the case of a selling agent who has been given title to the subject matter. Colloquial use of the term excludes independent contractor from the category of agent as a similar use excludes trustees, but in both cases there is an agency if in the transaction which they undertake they act for the benefit of another and subject to his control.
Restatement (Second) of Agency § 14N cmt. a (1958).
[12] We express no opinion regarding the ultimate disposition of this case, or whether there will ultimately be sufficient proof of vicarious liability in this matter. Our holding is restricted to a determination that ERISA does not preempt Villazon's vicarious liability claim, and that sufficient record evidence has been adduced to withstand the defendant HMO's motion for summary judgment with respect to the claim of vicarious liability.