842 So.2d 1006 (2003)
Angel R. RAMOS and Celina R. Ramos, individually and for an on behalf of their son, Angel Ramos, Jr., a minor, Appellants,
v.
PREFERRED MEDICAL PLAN, INC., Appellee.
No. 3D02-1392.
District Court of Appeal of Florida, Third District.
April 16, 2003.
Podhurst, Orsek, Josefsberg, Eaton, Meadow, Olin & Perwin and Joel Perwin, Miami, for appellants.
Carlton Fields and Robert E. Biasotti, St. Petersburg, for appellee.
Before SCHWARTZ, C.J., and COPE and WELLS, JJ.
COPE, J.
Angel and Celina Ramos appeal an adverse summary judgment in a medical malpractice case. We conclude that there are disputed issues of material fact on the issue of apparent agency, and remand for further proceedings.

I.
Plaintiffs-appellants Angel and Celina Ramos are members of Preferred Medical Plan, Inc., a health maintenance organization ("HMO"). Preferred enters into contracts with physicians to provide medical services to its members. As between Preferred and contracting physicians, the physicians are independent contractors.
Preferred's members must obtain medical services from physicians with whom Preferred has contracted. From Preferred's approved list, the plaintiffs selected Dr. Gregory Fox as their primary care physician.
The plaintiffs consulted Dr. Fox regarding the medical condition of their minor son, who suffered from gynecomastia. Dr. Fox referred the plaintiffs to Dr. Ignacio Fleites, a participating general surgeon, who is the chief of surgery at Westchester General Hospital. Dr. Fleites performed *1007 the surgery, and was paid by Preferred for the operation. There was a $400 co-payment for the surgery, which the plaintiffs paid to Preferred.
The plaintiffs brought suit against Dr. Fleites, Preferred, and Westchester General Hospital. They alleged that removal of the excess breast material associated with gynocomastia had been improperly performed, leaving scarring and a depression in the chest area.
So far as pertinent here, the plaintiffs alleged that Dr. Fleites was the apparent agent of Preferred. The trial court entered summary judgment in favor of Preferred, and the plaintiffs have appealed.[1]

II.
While this case was pending on appeal, the Florida Supreme Court announced its decision in Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842, 2003 WL 1561528 (Fla. March 27, 2003). The trial court did not have the benefit of this decision at the time it entered summary judgment, and the newly announced Villazon opinion requires reversal for further proceedings.
In Villazon, as here, an HMO entered into contracts with independent contractor physicians under which the physicians agreed to provide medical services to HMO members. The Florida Supreme Court ruled that an HMO can be held vicariously liable for the acts of an independent contractor physician if the physician is acting either (a) as the actual agent or (b) as the apparent agent of the HMO. Id. 843 So.2d at 850-51.
The present case involves only a claim of apparent agency, not a claim of actual agency. The plaintiffs assert that Dr. Fleites was the apparent agent of Preferred.
The Illinois Supreme Court has discussed the issue of apparent agency at length in Petrovich v. Share Health Plan of Illinois, Inc., 188 Ill.2d 17, 241 Ill.Dec. 627, 719 N.E.2d 756 (1999). We find the reasoning of that decision helpful here. The Petrovich decision states in part:
Because HMOs may differ in their structures and the cost-containment practices that they employ, a court must discern the nature of the organization before it, where relevant to the issues. As earlier noted, Share is organized as an independent practice association (IPA)-model HMO. IPA-model HMOs are financing entities that arrange and pay for health care by contracting with independent medical groups and practitioners.
This court has never addressed a question of whether an HMO may be held liable for medical malpractice.... Courts ... should not be hesitant to apply well-settled legal theories of liability to HMOs where the facts so warrant and where justice so requires.
. . . .
As a general rule, no vicarious liability exists for the actions of independent contractors. Vicarious liability may nevertheless be imposed for the actions of independent contractors where an agency relationship is established under either the doctrine of apparent authority or the doctrine of implied authority.
. . . .
We now hold that the apparent authority doctrine may ... be used to impose vicarious liability on HMOs.... Courts in other jurisdictions have likewise concluded that HMOs are subject to this form of vicarious liability....

*1008 To establish apparent authority against an HMO for physician malpractice, the patient must prove (1) that the HMO held itself out as the provider of health care, without informing the patient that the care is given by independent contractors, and (2) that the patient justifiably relied upon the conduct of the HMO by looking to the HMO to provide health care services rather than to a specific physician. Apparent agency is a question of fact.
A. Holding Out
The element of "holding out" means that the HMO, or its agent, acted in a manner that would lead a reasonable person to conclude that the physician who was alleged to be negligent was an agent or employee of the HMO. Where the acts of the agent create the appearance of authority, a plaintiff must also prove that the HMO had knowledge of and acquiesced in those acts. Significantly, the holding-out element does not require the HMO to make an express representation that the physician alleged to be negligent is its agent or employee. Rather, this element is met where the HMO holds itself out as the provider of health care without informing the patient that the care is given by independent contractors. Vicarious liability under the apparent authority doctrine will not attach, however, if the patient knew or should have known that the physician providing treatment is an independent contractor.
. . . .
A plaintiff must also prove the element of "justifiable reliance" to establish apparent authority against an HMO for physician malpractice. This means that the plaintiff acted in reliance upon the conduct of the HMO or its agent, consistent with ordinary care and prudence.
The element of justifiable reliance is met where the plaintiff relies upon the HMO to provide health care services, and does not rely upon a specific physician. This element is not met if the plaintiff selects his or her own personal physician and merely looks to the HMO as a conduit through which the plaintiff receives medical care.
Id. at 763-68 (emphasis added; citations omitted).
Florida's law of apparent agency is substantially identical to that expressed in the Illinois decision, except that in Florida the test for apparent agency has been stated as a three-part test where Illinois uses a two-part test. Under Florida law there is
a three-prong test under general agency law in order to determine the existence of apparent agency: first, whether there was a representation by the principal; second, whether a third party relied on that representation; and, finally, whether the third party changed position in reliance upon the representation and suffered detriment.
Almerico v. RLI Ins. Co., 716 So.2d 774, 777 (Fla.1998) (citations omitted); see also Villazon, 843 So.2d at 851-52 (Fla.2003).

III.
We conclude that disputed issues of material fact remain regarding the issue of apparent agency. Under Petrovich, the first question is whether "The HMO holds itself out as the provider of health care without informing the patient that the care is given by independent contractors." 241 Ill.Dec. 627, 719 N.E.2d at 766.
Preferred's own promotional literature indicates that it operates several full-service medical centers. (R. 881). "All of your medical care will be coordinated through the medical center that you originally *1009 chose on your application. This procedure will enable your primary physician to maintain a master medical record for you in order to ensure the continuity and quality of care that you should have as a member of Preferred Medical Plan." (R. 882). The member information includes, "You MUST see your Primary Care Physician in order to be treated. If it is necessary for you to see a specialist, it will be arranged for you. You CANNOT go on your own to a specialist without a written referral from your Primary Care Doctor." (R. 885).
Consistent with these policies, the plaintiffs consulted the primary care physician, Dr. Fox, who made the referral to Dr. Fleites. Under Preferred's rules, Dr. Fox could only refer the plaintiffs to a surgeon who was one of Preferred's participating providers. Preferred paid Dr. Fleites the fee for the surgery. The plaintiffs paid the $400 co-payment to Preferred.
As outlined in the Petrovich decision, the foregoing facts would lead a reasonable person to conclude that Preferred had undertaken to be the provider of health care services and that Dr. Fleites was acting on its behalf.
The Petrovich decision also holds, however, that "[v]icarious liability under the apparent authority doctrine will not attach... if the patient knew or should have known that the physician providing treatment is an independent contractor." Petrovich, 241 Ill.Dec. at 637, 719 N.E.2d 756.
The file contains a copy of the Preferred's Individual Medical and Hospital Services Contract. It provides in part, "The relationship between Health Plan and Participating Providers that are not Health Plan employees is an independent contractor relationship. Such Participating Providers are not agents or employees of Health Plan, nor is Health Plan, or any employee of Health Plan, an agent or employee of any such Participating Provider." As an initial matter, Preferred markets its services in English and Spanish. The promotional material quoted earlier is made available to subscribers in both languages. The plaintiffs are Spanish speaking. The Individual Medical and Hospital Services Contract is found in this record in the English language only.
Leaving aside the language issue, the contractual provision just quoted is, in any event, not clear enough to dispose of the apparent agency issue. The contract indicates that those persons who are not Health Plan employees are independent contractors. The contractual provision does not advise the subscriber who is an employee and who is not.
Preferred points to the medical consent form signed by Mrs. Ramos prior to the surgery, which was performed at Westchester Hospital. The medical consent form included, "I acknowledge that all physicians and surgeons furnishing services, including all radiologists, pathologists, anesthesiologists and emergency room physicians, are independent contractors and are not employees or agents of the hospital." Mrs. Ramos is Spanish speaking. She testified that this part of the consent form was not translated for her, while other parts were. Thus, this form is not dispositive of the issue.
Preferred correctly states that the contract between Preferred and Dr. Fleites describes Dr. Fleites as an independent contractor. While that is true, it is not dispositive on the issue of apparent agency. For apparent agency purposes, the question is what the plaintiffs knew or reasonably should have known. There is no indication that the plaintiffs ever saw the contract between Preferred and Dr. *1010 Fleites or had any reason to know of its contents.
The next question for purposes of the apparent agency analysis is reliance. As explained in Petrovich, this element is met "where the plaintiff relies on the HMO to provide health care services, and does not rely upon a specific physician. This element is not met if the plaintiff selects his or her own personal physician and merely looks to the HMO as a conduit through which the plaintiff receives medical care." 241 Ill.Dec. 627, 719 N.E.2d at 768.
The summary judgment record indicates that the plaintiffs met this part of the test. The plaintiffs chose their primary care physician from Preferred's list. That physician, Dr. Fox, referred the plaintiffs to Dr. Fleites, the surgeon on Preferred's approved list. As stated in the instructions Preferred gives its patients, "If it is necessary for you to see a specialist, it will be arranged for you." (R. 885).
The final question is whether there was a change of position and detrimental reliance. Again, this element is met. The operation was performed on the minor child. For purposes of this summary judgment, the plaintiffs' factual claims of bad result and physical injury are accepted as true.
For the stated reasons, the summary judgment is reversed and the cause remanded for further proceedings.
NOTES
[1] Settlements were reached with the other defendants.