SHEPHERD, J.,
dissenting.
I respectfully dissent.
This is an appeal by a Massachusetts law firm, Prince Lobel Glovsky & Tye, LLP., from a nonfinal order denying its motion to dismiss for lack of personal jurisdiction[1] in a legal malpractice action brought against it and a former Of Counsel, Richard Heidlage, Esq., arising out of an action in the United States District Court for the Southern District of Florida, in which Heidlage appeared and represented Appellee Charles N. Zalis and related entities. Whether personal jurisdiction exists turns on whether Heidlage was an agent of the firm during the course of the alleged negligent representation. Zalis *8 concedes the firm did not imbue Heidlage with actual authority to act on its behalf in the representation. The sole question presented in this appeal, then, is whether the Of Counsel relationship between Heidlage and Prince Lobel created an apparent agency relationship between the two of them. I would conclude that it did not and reverse the order of the trial court.
In the underlying federal case, Heidlage, a member of the Massachusetts Bar, appeared pro hac vice, to assist Florida counsel[2] in the representation of Zalis, the Zalis Family Limited Partnership, and a wholly owned entity of the partnership, North American Underwriting Managers, Inc., in an action brought by Florida counsel arising out of a failed business relationship between Zalis and Allen Gersten, a resident of Needham, Massachusetts. During the course of the representation, Zalis was first Of Counsel to the appellant, Prince Lobel, and then Of Counsel to Ko-tin Crabtree & Strong, LLP, both Massachusetts-based law firms. Of these two law firms, Zalis seeks to proceed only against Prince Lobel in this case.
Heidlage’s appearance as co-counsel in the federal case was inspired by the fact that Zalis previously had hired him to represent the Zalis entities in a suit filed by Gersten in Massachusetts just days pri- or to the initiation of the federal action. Zalis testified he sought out Heidlage because the business acquaintance who recommended Heidlage described him as a “tenacious bulldog,” and based upon prior litigation experience, that was the type of lawyer Zalis needed. He also testified he “relied on the fact that [Heidlage] was with a big firm (Prince Lobel) which would have the necessary resources to handle the case.”
However, these facts alone are not sufficient to support a conclusion that Heidlage was the apparent agent of Prince Lobel. Apparent agency exists only if each of the following three elements is present: 1) a representation by the purported principal; 2) reliance on that representation by a third party; and 3) a change in position by the third party in reliance on the representation. Mobil Oil Corp. v. Bransford, 648 So.2d 119, 121 (Fla.1995). “Apparent authority does not arise from the subjective understanding of the person dealing with the pm-ported agent, nor from appearances created by the purported agent himself; instead, apparent authority exists only where the principal creates the appearance of an agency relationship.” Izquierdo v. Hialeah Hosp. Inc., 709 So.2d 187, 188 (Fla. 3d DCA 1998)(internal quotations omitted)(citing Spence, Payne, Masington & Grossman, P.A. v. Philip M. Gerson, P.A., 483 So.2d 775, 777 (Fla. 3d DCA), rev. denied, 492 So.2d 1334 (Fla.1986)).
Here, there is no evidence that the purported principal, Prince Lobel, made any representation to Zalis, the purported third party. Zalis does not urge otherwise. Rather, Zalis urges that: because Heidlage had an office at Prince Lobel; he met with Heidlage there; he received correspondence from Heidlage on Prince Lo-bel stationery; all of the pleadings filed by Heidlage while he was with Prince Lobel indicated Heidlage was with Prince Lobel; when he called he went through a Prince Lobel switchboard; it appeared Heidlage’s secretary was a Prince Lobel secretary *9 and that some Prince Lobel lawyers and paralegals worked on the Florida litigation from their offices in Boston, Heidlage was the apparent agent of Prince Lobel. I disagree.
Instead, the outcome of this case is controlled by the decision of the Florida Supreme Court in Mobil Oil. Although involving a different business, Mobil Oil is legally indistinguishable from our case. In Mobil Oil, the plaintiff, Jeremy Bransford, entered a Mobil Mini Mart gas station in Broward County, owned by Mobil Oil but leased to Alan Berman. Mobil Oil, 648 So.2d at 120. While on the premises, Ber-man was attacked and beaten by one of Berman’s employees, who allegedly had a history of assaulting customers. Id. Bransford sued Mobil Oil on the theory it effectively had established an apparent agency relationship with the leaseholder, Berman. Id.
As grounds, Bransford noted the facts that Mobil owned the property; Mobil products were sold in the station; Mobil trademarks and logos were used throughout the premises; and, the franchise agreement with Mobil required the use of Mobil symbols and the selling of Mobil products. Moreover, Mobil allegedly sent its representatives to the station to provide various routine franchise support services to the lessee. Id. The Florida Supreme Court held that Bransford’s allegations were insufficient to plead a case against Mobil:
In today’s world, it is well understood that the mere use of franchise logos and related advertisements does not necessarily indicate that the franchisor has actual or apparent control over any substantial aspect of the franchisee’s business or employment decisions. Nor does the provision of routine contractual support services refute this conclusion.
[[Image here]]
Franchisors may well enter into an agency relationship with a franchisee if, by contract or action or representation, the franchisor has directly or apparently participated in some substantial way in directing or managing acts of the franchisee, beyond the mere fact of providing contractual franchise support activities.
[[Image here]]
The factual allegations in the complaint below clearly fail to allege even the minimum level of ‘representation’ necessary to create an apparent agency relationship. The plaintiff below alleged no genuine factual representation by Mobil, but merely assumed that such a representation is implicit in the prominent use of Mobil symbols and products throughout the station and in the provision of support activities.
Mobil Oil, 648 So.2d at 120-21 (emphasis added). This analysis applies in many contexts, including prominently medical malpractice cases involving hospitals. See, e.g., Izquierdo, 709 So.2d at 188 (holding that hospital was neither vicariously liable nor liable on the basis of apparent agency for alleged negligence of physician who provided care for patient in hospital pursuant to contract between health care provider and hospital where “there was no evidence that [hospital] partook in any activities to create the appearance of an agency relationship”).
Similarly here, it is undisputed that Prince Lobel partook in no activities to create the appearance of an agency relationship. Zalis simply “assumed” Heid-lage was an agent of the law firm. In fact, Heidlage was not the agent of the law firm. The law firm did not control or supervise him. As illustrated by his professional relationship with Zalis, Heidlage took in his own clients, made his own retention and compensation arrangements *10 with those clients,[3] and received all fees billed by him on his client matters. Pursuant to an agreement with the law firm, he rented an office from the firm and reimbursed the firm for expenses incurred by him at the firm, including the use of a halftime secretary. His name was separately shown as “Of. Counsel” on firm letterhead, and the signature block on all pleadings signed and filed by him expressly stated he was “Of Counsel” to the law firm. If he did work on a firm matter, he received eighty percent of the fee collected and conversely, if a firm professional assisted him on one of his matters, the firm received eighty percent of the fee.
It. cannot be gainsaid that Heidlage was affiliated with Prince Lobel. However, he was not a member, shareholder, or associate of the firm. Black’s Law Dictionary 352 (8th ed.2004)(defining Of Counsel to include “[a] lawyer who is affiliated with a law firm, though not as a member, partner, or associate”). When the existence of personal jurisdiction is contested by a defendant, it is the proponent of jurisdiction who must demonstrate its existence. Venetian Salami v. Parthenais, 554 So.2d 499, 501 (Fla.1989). I do not believe the Zalis entities met that burden here. Zal-is’s subjective belief, based upon his observations of the relationship between Heid-lage and Prince Lobel, is insufficient. See Izquierdo, 709 So.2d at 188.
Finally, I briefly must note the cases cited by the majority for affirmance are inapposite. In Ramos v. Preferred Medical Plan, Inc., 842 So.2d 1006 (Fla. 3d DCA 2003), we reversed a summary judgment granted to a health maintenance organization sued by a member on the ground that disputed issues of material fact remained on the issue of apparent agency. However, Ramos is inapposite for at least three reasons: (1) unlike our case, in Ramos there existed a direct contractual relationship between the claimant and the defendant health maintenance organization; (2) unlike our case, the defendant health maintenance organization selected the professional who performed the allegedly negligent service and supplied him to the Ramos’; and (3), most notably unlike our case, the defendant health maintenance organization in Ramos had made representations to the Ramos’ from which we concluded a reasonable jury could find an apparent agency relationship to exist.
Likewise, the remaining two cases cited in the majority — Waxoyl, A.G. v. Taylor Brion, Buker & Greene, 711 So.2d 1251 (Fla. 3d DCA 1998), and Windels, Marx, Davies and Ives v. Solitron, 510 So.2d 1177 (Fla. 4th DCA 1987) — are of no assistance to the majority decision, for two reasons: (1) in both of these cases, the question was whether or not the nonresident defendant had itself engaged in sufficient business activity in Florida for purposes, respectively, of §§ 48.161(1) and 48.193(l).(a) of the Florida Statutes; and (2) there was no apparent agency issue in either case. In both of these cases, long arm jurisdiction was found to exist on the basis that, each nonresident defendant had engaged in substantial business activity in this state. See. Waxoyl A.G., 711 So.2d at 1253; Windels, Marx, 510 So.2d at 1179. That is not the question in our case. See supra note 1.
For these reasons, I would reverse the trial court’s decision in this case and direct that Prince Lobel be dismissed from the proceeding below.

. The firm does not have an office in Florida or engage in business here. Accordingly, ap-pellees seek personal jurisdiction over the law firm under section 48.193(l)(b) of our long arm statute, § 48.193, Fla. Stat., which allows our courts to hale in nonresidents who "[cjommit a tortious act within this state.”

. This action was filed by Florida counsel in January 2001 and concluded in August 2002 via settlement, which Zalis now considers to have been inadequate. The record reflects Heidlage appeared in the case as pro hac vice in July 2002. Florida counsel changed at least three times during the twenty months the action pended in the Southern District of Florida. Various of the Florida counsel and their firms also have been named defendants in the instant action at one time or another during its course.

. His arrangement with Zalis was a verbal arrangement.