849 So.2d 1214 (2003)
Patricia M. FONT, etc., et al., Appellant,
v.
STANLEY STEEMER INTERNATIONAL, INC., et al., Appellee.
No. 5D02-1340.
District Court of Appeal of Florida, Fifth District.
July 25, 2003.
*1215 Harry K. Anderson, Jr., of Harry K. Anderson, Jr., P.A., Maitland, and Philip M. Burlington of Caruso, Burlington, Bohn & Compiani; Christian D. Searcy and Darryl L. Lewis of Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, for Appellants.
Sandra Manjasek of Manjasek and Moore, Daytona Beach, for Appellees.
SHARP, W., J.
Patricia Font, as personal representative of Howard Font's estate, appeals from a final summary judgment in a wrongful death action which determined a franchisor (Stanley Steemer) was not liable under an agency theory for the allegedly negligent acts of its franchisee (Gellner Enterprises) and the franchisee's employee (O'Connor). On appeal, Font argues the question whether Gellner Enterprises and O'Connor were actual agents of Stanley Steemer is one of fact and thus not appropriate for resolution by summary judgment. We agree and reverse.
In October 1997, Howard Font's vehicle was involved in a collision with a Ford van. Gellner Enterprises owned the van and used it in its cleaning business, a Stanley Steemer franchise. The van was painted in the distinctive Stanley Steemer colors and did not indicate the franchise was independently owned. The van was being driven by Gellner's employee, O'Connor, in the course and scope of his employment. Font died a few days later from his injuries received in the accident.
In September 1998, Patricia Font filed this wrongful death action against O'Conner, Gellner Enterprises and Stanley Steemer. Font alleged O'Connor was negligent and drove the van without a valid driver's license (his license had been suspended) and that Gellner Enterprises was liable because it owned the van and employed O'Connor as a driver when he did not have a valid license. Font also alleged Stanley Steemer was vicariously liable for the negligence of Gellner Enterprises and/or O'Connor based on actual or apparent agency.
Stanley Steemer denied this allegation and moved for summary judgment on the agency issue. Stanley Steemer pointed out that under its franchise agreement, Gellner Enterprises was an independent contractor and not the agent, partner, joint venturer, or employee of Stanley Steemer. Stanley Steemer also claimed there was no evidence it was involved in the day-to-day operation nor exercised any management over Gellner Enterprises in the operation of its day-to-day activities.[1]
The court below found Gellner Enterprises and O'Connor were neither the *1216 actual nor apparent agents of Stanley Steemer. On appeal, Font challenges only the determination as to actual agency. The essential elements of an actual agency relationship are: 1) acknowledgment by the principal that the agent will act for him or her, 2) the agent's acceptance of the undertaking, and 3) control by the principal over the actions of the agent. Goldschmidt v. Holman, 571 So.2d 422 (Fla. 1990); Ilgen v. Henderson Properties, Inc., 683 So.2d 513 (Fla. 2d DCA), rev.denied, 686 So.2d 578 (Fla.1996); Robbins v. Hess, 659 So.2d 424 (Fla. 1st DCA 1995).
The existence of an agency relationship is normally one for the trier of fact to decide. Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842 (Fla.2003); Goldschmidt; Robbins. The question can be resolved by summary judgment only in those cases where the evidence is capable of but one determination and there is no evidentiary question for the jury to resolve. Goldschmidt; Robbins. The party alleging the agency relationship bears the burden of proving it, just as the party moving for summary judgment has the burden to prove the absence of material fact issues. Robbins.[2]
Here the parties' franchise agreement expressly provides that Gellner is an independent contractor and not the agent or employee of Stanley Steemer. Nonetheless, the nature of the parties' relationship is not determined by the descriptive labels employed by the parties themselves. Villazon; Parker v. Domino's Pizza, Inc., 629 So.2d 1026 (Fla. 4th DCA 1993), rev. denied, 639 So.2d 977 (Fla.1994). Rather the test is one of control:
Whether one party is a mere agent rather than an independent contractor as to the other party is to be determined by measuring the right to control and not by considering only the actual control exercised by the latter over the former ... If the employer's right to control the activities of an employee extends to the manner in which a task is to be performed, then the employee is not an independent contractor.
Parker v. Domino's Pizza, 629 So.2d at 1027. See also Ortega v. General Motors Corp., 392 So.2d 40, 41 (Fla. 4th DCA 1980)(where the employee is merely subject to the control or direction of the employer as to the result to be procured, he is an independent contractor; if the employee is subject to the control of the employer as to the means to be used, then he is not an independent contractor).
Applying the "control" test to a franchise is not an easy task. On the one hand, a franchise clearly has an independent aspect to it. See, e.g., § 817.416(1)(b), Fla. Stat. Here, for example, Gellner Enterprises owned the van involved in the accident and was in sole control and management of its motor vehicles. Stanley Steemer does not hold any stock or have any ownership interest in Gellner Enterprises, did not employ O'Connor or any other Gellner Enterprise employee and does not hire, fire, or supervise any of Gellner Enterprises's employees.
On the other hand, a franchisor by necessity must retain some control over the use of its names, goods or services. See Drexel v. Union Prescription Centers, Inc., 582 F.2d 781 (3d Cir.1978). Whether the control retained by the franchisor is also sufficient to establish an employer/employee relationship depends in each case *1217 upon the nature and extent of such control as defined in the agreement or by the actual practice of the parties. Drexel.
Here the parties' franchise agreement states Stanley Steemer developed and manufactures the Stanley Steemer Carpet Cleaning machine and owns trade secrets, trademarks, service marks and patents related to carpet cleaning. Stanley Steemer granted Gellner Enterprises exclusive use of the Stanley Steemer trademarks, patents, and cleaning system and an exclusive license to own and operate a Stanley Steemer business in a specifically assigned geographical area. Gellner Enterprises was required to obtain Stanley Steemer's express written consent to service customer locations outside of its area and to refer requests to service customer locations outside its area to other Stanley Steemer franchisees or to Stanley Steemer.
Gellner Enterprises was required to start its business within three months after the date of the agreement. Gellner Enterprises had to pay an initial licensing fee and then pay monthly royalty payments equal to six percent of its gross sales. Stanley Steemer provided bulletins which contained specifications and procedures for operating the business and provided initial training and any subsequent training deemed necessary for the proper operation of the business.
Gellner Enterprises was required to clean carpets and upholstery only with patented Stanley Steemer carpet cleaning machines and cleaning products and to strictly adhere to the Stanley Steemer method of cleaning. Gellner Enterprises agreed to observe all the requirements in the Stanley Steemer manuals and clean carpets and upholstery only in accordance with the procedures proscribed in those manuals.
Prior to starting business, Gellner Enterprises had to purchase at least one of the most recent Stanley Steemer carpet cleaning machines and a van in which it was to be mounted. The franchise agreement required Gellner Enterprises to transport the cleaning machines, equipment and supplies only in a van-type truck which meets Stanley Steemer's specifications. Those specifications included the size, color, appearance and other characteristics incident to maintaining the Stanley Steemer image. Gellner Enterprises had to submit a written description of each truck it intended to use and Stanley Steemer had ten days in which to approve the truck. Only signs conforming to Stanley Steemer specifications could be used on the vehicle.
Stanley Steemer had to approve all advertising in advance and required Gellner Enterprises to contribute to advertising on a national basis. Gellner Enterprise employees had to wear uniforms which conform to Stanley Steemer's specification for design, color, fabric, durability, cleanliness and other characteristics incident to maintaining the Stanley Steemer image. Gellner Enterprises was required to have public liability, products liability and workers compensation insurance and, except for workers compensation insurance, to insure both itself and Stanley Steemer.
In Mobil Oil Corporation v. Bransford, 648 So.2d 119 (Fla.1995), the Florida Supreme Court recognized the mere use of franchise logos and related advertisements does not necessarily indicate the franchisor has actual or apparent control over any substantial aspect of the franchisee's business or employment decisions. Nor does the provision of routine contractual support services refute this conclusion. On the other hand, franchisors may well enter into an agency relationship with a franchisee if, by contract or action or representation, the franchisor has directly or apparently participated in some substantial way in directing or managing acts of the franchisee, *1218 beyond the mere fact of providing contractual franchise support activities.
In that case, the plaintiff Bransford went to a Mobil Mini Mart gas station owned by Mobil and leased to Berman. Bransford was attacked and beaten by one of Berman's employees. Bransford sued Mobil claiming it had established an apparent agency relationship with Berman. Bransford alleged Mobil owned the property, Mobil products were sold in the station, Mobil trademarks and logos were used throughout the premises, and the franchise agreement required the use of Mobil symbols and the selling of Mobil products.
The court found Bransford's allegations legally insufficient to plead a case against Mobil. Although the court spoke broadly in terms of both apparent and actual agency, Bransford's action was based on apparent agency only. Thus Mobil Oil has limited value in helping us resolve this case.
In Ortega v. General Motors Corp., 392 So.2d 40, 41 (Fla. 4th DCA 1980), Ortega sued General Motors claiming it was vicariously liable for the negligence of its franchisee South Bay Equipment Company which allegedly caused the death of her husband. The court entered summary judgment for General Motors and Ortega appealed.
The franchise agreement specifically stated that South Bay was an independent contractor. The agreement also required South Bay to obtain General Motors's approval for the location and design of the dealership, remain open for business during set hours and days, follow a uniform system of accounting specified by General Motors, make its records available for inspection by General Motors, establish minimum capital prescribed by General Motors, meet standards set by General Motors as to sales and customer services, maintain a parts department and customer service department, provide service for trucks sold by General Motors dealers, and obtain training for its service department by General Motors.
Despite these requirements, the fourth district concluded the method of operation of South Bay's business on a day-to-day basis was controlled by South Bay as an independent contractor and not by General Motors. Thus the order granting summary judgment to General Motors was affirmed. The court noted South Bay is an independently owned company and General Motors owns none of its stock. General Motors did not regulate the hiring, firing or supervising of South Bay's employees. South Bay exclusively determined those matters as well as wages and other employee benefits provided to its workers.
Several years later, however, the fourth district found the franchise agreement and operating manual from Domino's Pizza generated a question of fact on the agency issue. Parker v. Domino's Pizza, Inc., 629 So.2d 1026 (Fla. 4th DCA 1993), rev. denied, 639 So.2d 977 (Fla.1994). That case involved a personal injury action against the franchisor Domino's, its franchisee and the franchisee's delivery driver.
The Domino's franchise agreement provided that the franchisee was an independent contractor. However, the agreement also imposed sales quotas, location sites and guidelines for changing locations, required that Domino's approve the site and architectural plans, required managers to spend no less than forty hours per week at the store, mandated the use of Domino's bookkeeping requirements and required the franchisee to submit weekly, monthly and annual reports. Domino's also retained the right to advise the franchisee on improvements, food preparations, hiring, advertising and general operational *1219 procedures. The manual which Domino's provided to its franchisees contained directions for almost every facet of the business.
The franchise agreements in Ortega, Domino's and the present case all provide the franchisee is an independent contractor. In Villazon, the court observed it is not uncommon for parties to include conclusory statements in documents with regard to the independence of the relationship of the parties. This may occur even when other contractual provisions and the totality of the circumstances reflect otherwise. The facts peculiar to each case must govern the ultimate disposition.[3]
Plainly there is no "bright line" for determining when the requirements and restrictions in a franchise agreement renders the franchisee an agent of the franchisor. Because of the multitude of facts which must be examined to determine the nature of the parties' relationship, we are unable to say, as a matter of law, that Gellner Enterprises is not an agent of Stanley Steemer. Accordingly, we reverse the summary judgment and remand for further proceedings.
REVERSED and REMANDED.
THOMPSON and TORPY, JJ., concur.
NOTES
[1] Gellner Enterprises was not providing services to Howard Font at the time of the accident.
[2] Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Volusia County v. Aberdeen at Ormond Beach, LP, 760 So.2d 126 (Fla. 2000). The standard of appellate review for a grant of summary judgment is de novo. Id.
[3] We have reviewed other pertinent cases from our state and other jurisdictionscited by the parties and have conducted our own independent research. Although the cases involve similar franchise agreement provisions, the courts have reached different conclusions on the agency issue. Compare Fernandez v. Valle, 364 So.2d 835 (Fla. 3d DCA 1978), cert. denied, 373 So.2d 457 (Fla.1979); Patterson v. Western Auto Supply Co., 991 F.Supp. 1319 (M.D.Ala.1997); Drexel v. Union Prescription Centers, Inc., 582 F.2d 781 (3d Cir.1978); Singleton v. International Dairy Queen, Inc., 332 A.2d 160 (Super.Ct.Del.1975), with Miller ex rel. Bailey v. Piedmont Steam Company, Inc., 137 N.C.App. 520, 528 S.E.2d 923, rev. denied, 352 N.C. 590, 544 S.E.2d 782 (2000).