LAWSON, C.J.
For the second time, nursing home defendants appeal an order denying their motion to compel arbitration. The first appeal ended with remand for an eviden-tiary hearing to determine whether the female patient’s husband had authority to bind her with his signature on an arbitration agreement. See Fi-Evergreen Woods, LLC v. Robinson, 135 So.3d 331, 337 (Fla. 5th DCA 2013). Appellants now challenge the trial judge’s determination that the husband’s signature did not bind the wife. We reverse, noting at the outset that because the evidence in this case consisted of two depositions and a few documents, this court has the same vantage point as the trial court in evaluating that evidence. See Beckham/Tillman v. Bennett, 118 So.3d 896, 898 (Fla. 1st DCA 2013) (quoting State v. Sepanik, 110 So.3d 977, 978 (Fla. 2d DCA 2013)) (“[W]hen the trial court’s determination turns upon the meaning of ... depositions [and] other documents ... which are presented in essentially the same form to the appellate court ... the trial court does not have a special vantage point in such cases.”).
Although the husband had no clear recollection of the admissions process, the nursing home’s admissions director did. She testified that when she entered the patient’s room, the patient was alert, lying on the bed, with her husband standing nearby. The admissions director told the patient that she was there with the admissions documents, which needed to be signed. The patient responded that she wanted her husband to handle (review and sign) the documents. Then, the husband proceeded to sign the documents, which included the arbitration agreement, in the presence of both his wife and the admissions director. During the process, the admissions director. expressly noted the arbitration agreement, in the patient’s presence, explaining that the facility did not require entry into an arbitration agreement as a condition to admission. Relying on Stalley v. Transitional Hospitals Corporation of Tampa, 44 So.3d 627 (Fla. 2d DCA 2010), the trial court found that the husband was not authorized to sign the arbitration agreement on these facts. This conclusion was error.[1]
As explained in Stalley, a non-signatory to an arbitration agreement is bound to the agreement “when the signatory ... is authorized to act as the agent of the person sought to be bound[.]” Id. at 630. In this regard, arbitration agreements are no different from any other contract in that “ ‘ordinary principles of contract law and agency’ ” determine the issue. Id. (quoting Martha A. Gottfried, Inc. v. Paulette Koch Real Estate, Inc., 778 So.2d 1089, 1090 (Fla. 4th DCA 2001)). The Stalley panel further correctly explained that:
*496 An agency relationship can arise by written consent, oral consent, or by implication from the conduct of the parties. See Thomkin Corp. v. Miller, 156 Fla. 388, 24 So.2d 48, 49 (1945). An agency by implication, or apparent agency, arises only when there has been (1) a representation by the principal that the actor is his or her agent, (2) reliance on that representation by a third party, and (3) a change in position by the third party in reliance on that representation. See Mobil Oil Corp. v. Bransford, 648 So.2d 119, 121 (Fla.1995).
Id. at 630.
As the Stalley panel made clear, there was no apparent agency[2] in their case (a hospital admission case) because the principal (the patient) never represented that the person who signed the arbitration agreement in that case was authorized to do. See id. (“As to the first element, when there has been no representation of authority by the principal, no apparent or implied agency arises.” (citation omitted)). In Stalley, the hospital had simply accepted the representation' of the spouse that she was authorized to handle the admissions documents on behalf of the patient. The panel further correctly noted that “[t]he acts of the agent, standing alone, are insufficient to establish that the agent is authorized to act for the principal.” Id. (citations omitted). Our case is distinguishable because the patient/principal here expressly told the nursing home’s admissions director that she wanted her husband to handle the documents on her behalf — a clear representation, at least by implication, that she authorized him to do so. As the nursing home relied on the principal’s representation that her husband was authorized to sign the admission documents for her, and changed its position by accepting the husband’s signature as binding, we find that the patient was bound by her husband’s signature under ordinary principles of contract law and agency.
Despite this distinction, the trial court relied upon the following additional language from Stalley, arguably dicta, in which the panel observed that:
There is nothing in the record to show that anyone told [the patient] that [his spouse] would be asked to sign a document agreeing to arbitrate or that by agreeing to arbitrate he would be giving up his constitutional right to a jury trial. Instead, for all [the patient] knew, the documents [his spouse] signed were those providing for his care, verifying his personal information, verifying his insurance coverage, and ordering his meals, i.e., the “normal paperwork” attendant to a hospital admission. In the absence of some evidence that [the patient] knew that [his spouse] would be asked to waive his constitutional rights, [the patient’s] failure to ask to review the documents cannot constitute a representation that [his spouse] was authorized to act as his agent in waiving his right to a jury trial. Thus, since [the hospital] failed to present any evidence of such a representation by [the patient] concerning [his spouse’s] authority, it did not establish a necessary element of the formation of an apparent agency, and it cannot bind [the patient] to the arbitration agreement he did not sign.
Id. at 631. Despite the panel’s narrow focus in this passage on the arbitration agreement — and, more specifically, on the agreement to forgo “constitutional rights” (a jury trial) in favor of an alternative form of dispute resolution — the material fact in *497 Stalley was that the principal made no representation that his spouse was authorized to sign any of the admissions-related documents on his behalf.
But, it appears that the trial court may have viewed this language as setting forth some generalized rules of law, either: (1) that an agent cannot bind a principal to an arbitration agreement without some additional express waiver by the principal of his or her “constitutional right to a jury trial”; or (2) that a principal’s general representation that his or her agent is authorized to sign contracts or other documents relating to admission to a medical facility does not include an arbitration agreement because that contract is not “necessary” for admission. If these propositions were intended holdings of Stalley, we disagree with them.
 With respect to the first issue, despite the fact that arbitration agreements alwayá necessarily involve forgoing a jury trial to resolve potential disputes, general contract principles apply to arbitration agreements, Martha A. Gottfried, Inc., 778 So.2d at 1090, such that “arbitration agreements [are] treated like all other contracts[,]” Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 447, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), with the caveat that arbitration is “a favored means of dispute resolution^]” Roe v. Amica Mut. Ins. Co., 533 So.2d 279, 281 (Fla.1988). This means that, where possible, courts “should resolve all doubts in favor of arbitration rather than against it.” Prudential Sec., Inc. v. Katz, 807 So.2d 173, 174 (Fla. 3d DCA 2002) (citing Ronbeck Constr. Co. v. Savanna Club Corp., 592 So.2d 344, 346 (Fla. 4th DCA 1992)). Given this well-established precedent, we hold- that an agent can bind a principal to an arbitration agreement just like any other contract. There is no special rule requiring the principal to independently waive the right to a jury trial or expressly and separately acknowledge or agree that the agent is also authorized to waive a jury trial on his or her behalf.
With respect to the second issue, under general agency and contract principles, “the third party’s reliance on the purported agent’s apparent authority must be reasonable.” Jackson Hewitt, Inc. v. Kaman, 100 So.3d 19, 32 (Fla. 2d DCA 2011) (citations omitted). Thus, the question is not whether the arbitration agreement was “necessary” for admission, but whether it was reasonable for the nursing home to view the patient’s representation that her husband was authorized to handle all admissions documents as including the arbitration agreement. Because dispute resolution documentation has become a regular part of medical facility admissions, we believe that it was reasonable for the nursing home to take the patient’s representation that her husband was authorized to review and sign all of the admissions-related documents, without limitation, as including the arbitration agreement. Indeed, this case is even clearer. In the wife’s presence, the admissions director identified the arbitration agreement, told the husband it was not required for admission, and gave him a chance to read it before signing. He signed the agreement, in his wife’s presence, while acting within the scope of his apparent authority. Id.; see also Rushing v. Garrett, 375 So.2d 903, 906 (Fla. 1st DCA 1979) (noting that apparent authority may arise when “actions of the principal, reasonably interpreted, cause a third person to believe in good faith that the principal consents to the acts of the agent” or when “principal knowingly permits the agent to act in a certain manner as if he were authorized” (quoting Miller v. Mueller, 343 A.2d 922 (Md.Ct.Sp.App.1975))). Therefore, any information contained in the arbitration agreement was properly *498 imputed to the wife, See Ruotal Corp., N.W., Inc. v. Ottati, 391 So.2d 308, 309 (Fla. 4th DCA 1980) (“It is axiomatic that knowledge of the agent constitutes knowledge of the principal as long as the agent received such knowledge while acting within the scope of his authority.”), and she was bound by his signature on the document. Amstar Ins. Co. v. Cadet, 862 So.2d 736, 742 (Fla. 5th DCA 2003) (“A principal may be liable for the acts of his or her apparent agent that are committed within the scope of the apparent agency.”).
We reverse the order on appeal and remand with directions to grant Appellants’ motion to compel arbitration.
REVERSED and REMANDED with DIRECTIONS.
EVANDER and COHEN, JJ., concur.

. Alternatively, Appellee argues that even if the husband had authority to sign the arbitration agreement, this court should affirm based on the tipsy coachman reason that the nursing home failed to authenticate the arbitration agreement. Because the estate did not challenge the arbitration agreement on' this ground below, it was accepted without objection and thereby became part of the appellate . record. It is too late, at this point, to raise an evidentiary objection to the document. See, e.g., Fi-Evergreen Woods, LLC v. Estate of Vrastil, 118 So.3d 859, 864 (Fla. 5th DCA 2013) (declining to consider appellee’s additional reasons for finding arbitration agreement unenforceable because they were not argued in the trial court); Hanisch v. Wilder, 210 So.2d 491, 493 (Fla. 3d DCA 1968) (holding appellant waived argument that photocopies lacked proper foundation by failing to object on the same ground below).

. We limit our discussion to the apparent agency theory because it was the agency theory advanced in this case, and fully resolves the case.