**Stephen DYE and Douglas Bohn, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**TAMKO BUILDING PRODUCTS, INC., Defendant.**

Case No: 8:17–cv–590–T–35AEP

United States District Court, M.D. Florida.

Signed 8/11/2017

Daniel Calvert, Parker Waichman, LLP, Bonita Springs, FL, Frank Michael Petosa, Morgan & Morgan, PA, Plantation, FL, Panagiotis V. Albanis, Morgan & Morgan, PA, Ft Myers, FL, Scott C. Harris, Whitfield, Bryson & Mason, LLP, Raleigh, NC, for Plaintiffs.

Francis Morton McDonald, Jr., Sarah Anne Long, McDonald Toole Wiggins, PA, Orlando, FL, Jessica Davidson Miller, Skadden, Arps, Slate, Meagher & Flom, LLP, Washington, DC, Richard T. Bernardo, Skadden, Arps, Slate, Meagher & Flom, LLP, New York, NY, for Defendant.

## ORDER

MARY S. SCRIVEN, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** comes before the Court for consideration of Defendants' Motion to Compel Arbitration and Dismiss the Proceeding or, In the Alternative, Stay the Proceeding (Dkt. 11) ("Motion to Compel Arbitration") and Plaintiffs' Response in opposition thereto (Dkt. 19). Defendant moves this Court to compel Plaintiffs individually to arbitrate their disputes concerning Defendant's allegedly defective Shingles in accordance with what Defendant contends are valid and enforceable agreements to arbitrate. Plaintiffs argue that they are not required to arbitrate their disputes because no binding arbitration agreement exists between the Parties. Upon consideration of all relevant filings, case law and being otherwise fully advised, the Court **GRANTS** Defendants' Motion to Compel Arbitration as described herein.

## I. BACKGROUND

This putative class action arises out of Plaintiffs' purchase of Shingles manufactured by Defendant Tamko Building Products, Inc. ("Tamko" or "Defendant"). (Dkt. 1) Plaintiffs allege that they hired roofers to purchase and install the Shingles on their homes. (Id. at ¶¶ 21, 26) Plaintiff Dye alleges that the Shingles were installed on his Tampa home in 2013, and Plaintiff Bohn alleges that the Shingles were installed on his Middleburg home in 2009. (Id.) Plaintiffs aver that prior to their purchases, their roofers conveyed to them Tamko's representations that "the Shingles would be free from defects for 30 years, conformed to all applicable industry standards and building codes, and were durable and reliable . . . ." (Id. at ¶¶ 22, 27) Plaintiffs allege that they relied on these representations in making their purchases. (Id.) Plaintiffs assert that after the purchase and installation of the Shingles, they "discovered that [the] Shingles were cracking, blistering, prematurely failing, and experiencing severe granule loss." (Id. at ¶¶ 23, 28) Plaintiffs allege that "a defect in the Shingles' design and manufacture permits blisters and cracks to occur because Tamko designed the Shingles to be manufactured with less than the required amount of asphalt and in a manner that permits moisture intrusion, creating gas bubbles that result in blistering and cracking." (Id. at 12)

On each package of Shingles was a section that read "IMPORTANT" and "READ CAREFULLY BEFORE OPENING BUNDLE." (Dkt. 11–2 at ¶ 11) Part of the information printed on the Shingles' packaging was the Shingles' thirty (30) year Limited Warranty and contact information for Tamko. (Id.) (See Dkts. 11–1, 11–3) The Limited Warranty required Plaintiffs to notify Tamko of any claims within thirty (30) days following discovery of a problem with the Shingles. (Dkts. 11–1, 11–3) Plaintiff Dye's Limited Warranty contained the following arbitration clause in all capital letters

**MANDATORY BINDING ARBITRATION:** EVERY CLAIM, CONTROVERSY, OR DISPUTE OF ANY KIND WHATSOEVER (EACH AN "ACTION") BETWEEN YOU AND TAMKO (INCLUDING ANY OF TAMKO's

EMPLOYEES AND AGENTS) RELATING TO OR ARISING OUT OF THE PRODUCT SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION, REGARDLESS OF WHETHER THE ACTION SOUNDS IN WARRANTY, CONTRACT, STATUTE OR ANY OTHER LEGAL OR EQUITABLE THEORY.

(Dkt. 11–1 at 2) Likewise, Plaintiff Bohn's Limited Warranty contained the following arbitration clause in all bold, capital letters

**MANDATORY BINDING ARBITRATION: EVERY CLAIM, CONTROVERSY, OR DISPUTE OF ANY KIND WHATSOEVER INCLUDING WHETHER ANY PARTICULAR MATTER IS SUBJECT TO ARBITRATION (EACH AN "ACTION") BETWEEN YOU AND TAMKO (INCLUDING ANY OF TAMKO's EMPLOYEES AND AGENTS) RELATING TO OR ARISING OUT OF THE SHINGLES OR THIS LIMITED WARRANTY SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION, REGARDLESS OF WHETHER THE ACTION SOUNDS IN WARRANTY, CONTRACT, STATUTE OR ANY OTHER LEGAL OR EQUITABLE THEORY.**

(Dkt. 11–3 at 3) Both Limited Warranties provided

**ANY ACTION BROUGHT BY YOU AGAINST TAMKO WILL BE ARBITRATED (OR, IF ARBITRATION OF THE ACTION IS NOT PERMITTED BY LAW, LITIGATED) INDIVIDUALLY AND YOU WILL NOT CONSOLIDATE, OR SEEK CLASS TREATMENT FOR, ANY ACTION UNLESS PREVIOUSLY AGREED TO IN WRITING BY BOTH TAMKO AND YOU.**

(Dkt. 11–1 at 2, Dkt. 11–3 at 3)

On March 10, 2017, Plaintiff filed this action, asserting the following causes of actions: Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), breach of express warranty, strict products liability, design defect, manufacturing defect, failure to warn, negligence/negligent design or negligence *per se* and negligent misrepresentation. (Dkt. 1 at ¶¶ 74–136.) In response, Tamko filed the Motion to Compel Arbitration, arguing that Plaintiffs are required to arbitrate their disputes individually pursuant to the arbitration clause contained in the Limited Warranty. (Dkt. 11)

## II. DISCUSSION

■ "Under both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (1999). "Florida public policy favors arbitration, and any doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration." BKD Twenty–One Management Company, Inc. v. Delsordo, 127 So.3d 527, 530 (Fla. 4th DCA 2012). "However, arbitration is favored only as to issues the parties have actually agreed to arbitrate." Id. "[N]o party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate." Seifert, 750 So.2d at 636.

Here, elements two and three are not in dispute. That is to say, no party contends that the claims at issue would fall outside the ambit of the broad arbitration agreement if it were valid and enforceable. Additionally, no party contends that either party waived the right to arbitrate. The dispute here is whether a valid written agreement exists between the Parties re-

quiring them to arbitrate the claims regarding the allegedly defective Shingles.

Tamko argues that the arbitration clause is binding on Plaintiffs and requires that they individually arbitrate their respective claims. (Dkt. 11) Tamko argues that Plaintiffs' agreed to arbitrate their claims by their respective decisions to purchase, install, and retain the Shingles, which packaging contains the Limited Warranty that includes the arbitration clause, and that Plaintiffs' claims are within the scope of that arbitration clause. (Id. at 8–10, 15–20) Tamko asserts that the arbitration clause is valid and enforceable against Plaintiffs notwithstanding that the Shingles were purchased by Plaintiffs' roofers and not Plaintiffs personally, arguing that the roofers acted as Plaintiffs' agents when purchasing the Shingles. (Dkt. 28)

Tamko further contends that Plaintiffs' agreement to arbitrate is evidenced by their attempt to enforce the Limited Warranty in this action. (Id. at 10–14) Tamko argues that Plaintiffs cannot seek to avoid arbitration provisions contained in the same agreement they seek to enforce, citing equitable estoppel principles. (Id.) Tamko argues that the foregoing contention certainly applies to Plaintiff Bohn, whom Tamko contends "manifested his acceptance of the terms of the Limited Warranty (including its arbitration clause) by submitting a claim to Tamko pursuant to its provisions."[1] (Id.) Tamko also argues that the Parties' agreement to arbitrate is supported by consideration by virtue of both Tamko's and Plaintiffs' mutually

binding agreement to arbitrate. (Id. at 10–14)

Plaintiffs in turn argue that the arbitration clause is not binding on Plaintiffs and Plaintiffs are not required to arbitrate their respective claims individually because they never formed a valid and enforceable agreement with Tamko to arbitrate. (Dkt. 19) Specifically, Plaintiffs argue that Tamko cannot establish that Plaintiffs assented to the arbitration agreement because Plaintiffs' roofers purchased and installed the Shingles and, therefore, Plaintiffs were unaware there was an arbitration agreement. (Id. at 6–13)

Plaintiffs also argue there was no adequate consideration for Tamko's arbitration agreement, contending that Plaintiffs were not the purchasers of the Shingles because their roofers were. (Id. at 13–14) Plaintiffs further argue that they are not estopped from avoiding the arbitration agreement because, contrary to Tamko's assertion, Plaintiffs are not seeking to enforce the terms of the Limited Warranty. (Id. at 14–17) Rather, according to Plaintiffs, they "are seeking to enforce Tamko's express representations in its marketing materials that the Shingles conform to all applicable industry standards and building codes, including ASTM D 23462 and those adopted by the State of Florida." (Id. at 16) Plaintiffs also contend that Plaintiff Bohn did not consent to the arbitration clause by submitting a warranty claim after his purchase of the Shingles. (Id. at 3, 10–14)

The arbitration clauses at issue are broad and if binding on the Parties would

---

1. This assertion refers to the fact that in or about August 2014, Plaintiff Bohn, pursuant to the Limited Warranty, contacted Tamko regarding 28 allegedly defective Shingles and filed a claim via the Limited Warranty claim form provided to him by Tamko. (Dkt. 1 at 30; see Dkt. 11–4) Tamko used a proration calculation to determine that Plaintiff Bohn was entitled to 23 squares of new Shingles. (Id.; Dkt. 11–5) Tamko also offered Plaintiff Bohn $100 for his role in completing the claim kit process. (Id.; see Dkt. 11–6) On January 19, 2015, Plaintiff Bohn sent correspondence to Tamko stating that he deposited the $100 check. (Dkt. 11–7)

clearly encompass Plaintiffs' claims. Thus, the Court must decide whether Plaintiffs and Tamko entered into a valid and enforceable agreement to arbitrate. The Court answers the foregoing in the affirmative.

In Hoekman v. Tamko Building Products, Inc., the court held that the plaintiffs were bound by the arbitration clause through agency principles on a set of facts nearly identical to this case. No. 2:14-cv-01581-TLN-KJN, 2015 WL 9591471, *3, *6 (E.D. Cal. Aug. 26, 2015). There, the plaintiffs had Tamko shingles installed on their home by a roofing company. The plaintiffs alleged that they purchased Tamko's shingles because of Tamko's representations in its advertising and marketing materials. After installation, the plaintiffs discovered that their shingles were severely cracking, blistering, and prematurely failing, and that there was significant granule loss on parts of their roof. The plaintiffs contacted Tamko, received and completed a warranty claim form, and ultimately received a prorated number of new shingles and a check for $100, which they cashed. Thereafter, the plaintiffs filed a class action complaint against Tamko, and Tamko moved to compel arbitration. The plaintiffs argued, among other things, that the packaged shingles were delivered directly into the care of the roofers working on their home and, therefore, they never saw nor agreed to any arbitration clause. The court rejected this argument for several reasons including that the roofers operated as the plaintiffs' agents by plaintiffs' authorizing the roofers directly to receive, open, and install the shingles. Accordingly, the court held that consistent with agency principles, the roofer's knowledge, including knowledge of the limited warranty and arbitration clause contained on the packaging, was imputed to the plaintiffs.

Other courts to address this issue based on similar facts have also found that through principles of agency the roofers' knowledge was imputed to the plaintiffs and, therefore, the plaintiffs were bound by the agreement to arbitrate. See, e.g., American Family Mut. Ins. Co. v. Tamko Building Products, Inc., 178 F.Supp.3d 1121, 1125-26 (D. Colo. 2016) (finding that the insureds' contractor and subcontractor were the insureds' special agent for purposes of completing the roofing project for which they were hired and, therefore, the insureds, and the plaintiff insurer as subrogee of the insureds, were bound by the arbitrator clause regardless of whether the insureds themselves ever saw or consented to the arbitration clause); Krusch v. TAMKO Building Products, Inc., 34 F.Supp.3d 584, 588-90 (M.D. N.C. 2014) (holding that building contractor hired by home owner acted as owner's agent when purchasing roofing shingles for owner's home and thus owner was bound by the arbitration agreement despite owner's contention that contractor never notified owner of the limited warranty or its arbitration provision).

Plaintiff relies on cases that found that an arbitration agreement was not binding on the plaintiffs and unenforceable. These cases are distinguishable or unpersuasive. In Mendez v. Hampton Court Nursing, LLC, the court addressed whether an arbitration agreement signed by the son in connection with the father's nursing home was binding on the father. 203 So.3d 146, 150-151 (Fla. 2016). The court noted that the evidence before it was conflicting as to whether the father authorized the son to act as his agent. Id. However, the court explicitly stated that it need not determine the foregoing or whether agency principles applied to bind the father to an arbitration agreement signed by the son "because [the defendant] Hampton Court expressly disclaim[ed] any reliance on agency principles." Id. at 151. In Nelson v. Tamko Building Products Inc., a case involving allegedly defective Tamko shingles, the

court denied Tamko's motion to compel arbitration because Tamko did not submit evidence sufficient to establish an enforceable agreement to arbitrate, noting that Tamko "merely attached the unauthenticated limited warranty to its motion." No. 15-1090-MLB, 2015 WL 3649384, *2 (D. Kan. June 11, 2015). The agency theory at issue in this case was never presented to the Nelson court; hence, the court never addressed this issue. As such, Mendez and Nelson are distinguishable.

The Court finds the analysis in Hobbs v. Tamko Building Products, Inc., 479 S.W.3d 147 (S.D. Mo. 2015), unpersuasive. There, the plaintiffs themselves purchased the shingles, which came with the limited warranty and arbitration provision printed on the outside of the wrapper. Id. at 148. Despite that fact, the plaintiffs claimed that they never received a copy of the warranty at the time of purchase and that they were not made aware that the warranty included an arbitration provision. Id. Thereafter, their shingles began to have problems, and the plaintiffs contacted Tamko and received and submitted warranty claim forms. Id. The warranty claim forms made no mention of the arbitration provision. Id. The court found that the plaintiffs did not agree to arbitrate by simply purchasing and retaining the shingles and that Tamko did not form an agreement with them by simply wrapping the agreement around the packaging because, according to that court, the purchaser is unlikely to see it since the packaging is torn off and discarded. Id. at 149.

This Court declines to follow the analysis and determination in Hobbs. In Hobbs, the plaintiffs themselves actually purchased the shingles and therefore were in actual possession of the packaging on which the Limited Warranty containing the arbitration provision was printed. They simply did not read it and therefore were unaware of the Limited Warranty and the arbitration provision. As the court in Hoekman explained

> Whether or not the Plaintiffs actually read the warranty is irrelevant. Hill v. Gateway 2000, Inc., 105 F.3d 1147, 1148 (7th Cir. 1997) ("A contract need not be read to be effective; people who accept [the contract] take the risk that the unread terms may in retrospect prove unwelcome.")
>
> . . . .
>
> Holding for the Plaintiffs would mean that purchasers can deny unwanted terms, as long as they avoid reading them prior to purchase and then have the product delivered to someone else. With good reason, prior courts have rejected this outcome. Similarly, this Court finds that Plaintiffs' alleged lack of actual notice is not enough to overturn the valid arbitration agreement.

Hoekman, No. 2:14-cv-01581-TLN-KJN, 2015 WL 9591471 at *6, *7. See also American Family, 178 F.Supp.3d at 1129 n. 5 (declining to follow Hobbs).

The Shingles' packaging containing the Limited Warranty is akin to shrinkwrap on certain products that contain agreements by which the purchaser is bound once the product is opened. As the court explained in TracFone Wireless, Inc. v. Pak China Group Co. Ltd.,

> Florida law provides that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Fla. Stat. § 672.204(1) (adopting U.C.C. 2–204). This statute includes "shrinkwrap contracts" like the one at issue, where an agreement becomes effective as soon as a customer opens the product.

843 F.Supp.2d 1284, 1298 (S.D. Fla. 2012) (citing TracFone Wireless, Inc. v. Access Telecom, Inc., 642 F.Supp.2d 1354, 1364

(S.D. Fla. 2009)). In Pak China Group, the court found that the consumers had entered into an enforceable contract with the wireless carrier by the carrier's including restrictive language on the packaging. Id. at 1298–99. Hence, the consumers were bound by the terms and conditions contained in the enclosed user guide once they purchased and opened the package. Id. The court explained that

> [t]he outside retail packaging of TracFone's Phones contains conspicuous language restricting the use of the Phones for TracFone Prepaid Wireless service and prohibits the consumer from tampering or altering the software or hardware in the Phone. The language provides in part "[b]y purchasing or opening this package, you are agreeing to these terms and the terms and conditions of service in the enclosed user guide." Accordingly, an enforceable contract exists between the parties as to the Defendants' use of the Phones . . . .

Id. See also Salco Distribs., LLC v. iCode, Inc., No. 8:05 CV 642 T 27TGW, 2006 WL 449156, *2 n. 5 (M.D. Fla. Feb. 22, 2006) (purchaser of software product was bound by terms of shrinkwrap agreement upon opening the packaging of the product).

The Court is persuaded by the reasoning in Hoekman, American Family, and Krusch, concerning the application of agency principles in determining whether the plaintiffs entered into a valid and enforceable agreement to arbitrate. Accordingly, the Court must determine whether, under the Florida law, the roofers were acting as Plaintiffs' agents when they purchased and opened the Shingles on Plaintiffs' behalf and installed the Shingles on Plaintiffs' roofs. The Court answers that question in the affirmative.

The essential elements of an actual agency relationship are: (1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent. Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842, 856 n. 10 (Fla. 2003) (quoting Goldschmidt v. Holman, 571 So.2d 422 (Fla. 1990)). "The party alleging the agency relationship bears the burden of proving it, just as the party moving for summary judgment has the burden to prove the absence of material fact issues." Font v. Stanley Steemer Intern., Inc., 849 So.2d 1214, 1216 (Fla. 5th DCA 2003). Tamko satisfies this burden.

As Tamko correctly asserts, the facts establish that Plaintiffs designated their roofers as their agents with respect to their roofing project. Specifically, Plaintiffs acknowledged the roofers would act for them by hiring and contracting with the roofers to purchase, accept delivery, open, and install the Shingles on Plaintiffs' behalf. (Dkt. 1 at ¶¶ 8, 21–22, 26–27) The roofers accepted this undertaking by purchasing the Shingles on Plaintiffs behalf, accepting delivery of and opening the Shingles on Plaintiffs' behalf, and installing the Shingles on Plaintiffs' roofs. (Id.) Plaintiffs controlled the roofers actions as they hired the roofers to purchase shingles and, after the roofers advised them of "Tamko's representations concerning the quality and durability of the Tamko Shingles" and "that the Shingles would be free from defects for 30 years and conformed to all applicable industry standards and building codes," relied on these representations and had their roofers purchase and install the Tamko Shingles. (Id.)

These facts establish that the roofers were acting as Plaintiffs' agents when Plaintiffs authorized and instructed the roofers to purchase the Shingles and install them on Plaintiffs' behalf and the roofers consented to these undertakings. Consequently, the roofers' knowledge concerning the existence of the Limited War-

ranty containing the arbitration provision is imputed to Plaintiffs. Fi–Evergreen Woods, LLC v. Estate of Robinson, 172 So.3d 493, 497–98 (Fla. 5th DCA 2015) (husband signed agreement while acting as wife's agent and within the scope of his apparent authority; "[t]herefore any information contained in the arbitration agreement was properly imputed to the wife") (citing Ruotal Corp., N.W., Inc. v. Ottati, 391 So.2d 308, 309 (Fla. 4th DCA 1980) ("It is axiomatic that knowledge of the agent constitutes knowledge of the principal as long as the agent received such knowledge while acting within the scope of his authority.")).

 Plaintiffs contend that they never gave the roofers the authority to bind them to any arbitration provision regarding the Shingles. This contention is unavailing. In authorizing the roofers as their agents concerning their roofing projects, it was unnecessary for Plaintiffs to provide them additional or expressed permission to enter into the arbitration agreement provided that the purchase of the Shingles was within the scope of the work the roofers were hired to do. In other words, when acting within the scope of his or her authority "an agent can bind a principal to an arbitration agreement just like any other contract." Fi–Evergreen Woods, 172 So.3d at 497. "There is no special rule requiring the principal to independently waive the right to a jury trial or expressly and separately acknowledge or agree that the agent is also authorized to waive a jury trial on his or her behalf." Id. See also Kindred Nursing Centers Ltd. Partnership v. Clark, —— U.S. ——, 137 S.Ct. 1421, 197 L.Ed.2d 806 (2017) (United State Supreme Court vacating the Kentucky Supreme Court's judgment and invalidating Kentucky's "clear-statement rule," which required an explicit statement from the principal before an agent could enter into an arbitration agreement and relinquish the principal's right to go to court and receive a jury trial, because the rule violated the Federal Arbitration Act). Here, there is no question that purchasing the Shingles was within the scope of work for which the roofers were hired. Therefore, the roofers could and did bind Plaintiffs to the arbitration agreement when they purchased the Shingles as Plaintiffs' agents and installed the Shingles on Plaintiffs' roofs.

 Accordingly, the Court finds that Plaintiffs, via their agent roofers, entered into a valid and enforceable arbitration agreement with Tamko, which encompasses the claims in this matter. Having determined that Plaintiffs entered into an enforceable arbitration agreement, the Court need not address the moot question whether there was valid consideration to support the arbitration agreement as Plaintiffs paid the purchase price for the Shingles. Furthermore, "the agreement of a party to submit to arbitration is sufficient consideration to support the other party's agreement to do the same." Kinko's, Inc. v. Payne, 901 So.2d 354, 355 (Fla. 2d DCA 2005). The Court also need not address whether Plaintiffs are equitably estopped from avoiding the arbitration agreement due to their alleged attempt to enforce the Limited Warranty provisions. Plaintiffs are directed to arbitrate their respective disputes individually pursuant to the arbitration provision.

### III. CONCLUSION

Based on the foregoing, it is **ORDERED**

1. Defendant's Motion to Compel Arbitration and Dismiss the Proceeding or, In the Alternative, Stay the Proceeding (Dkt. 11) is **GRANTED.**

2. Plaintiffs are **DIRECTED** to arbitrate all claims individually pursuant to the arbitration provision contained in the Limited Warranty.

3. The Complaint is **DISMISSED WITHOUT PREJUDICE.**

4. The Clerk is directed to **TERMINATE** any pending motions and **CLOSE** this case.

**DONE and ORDERED** in Tampa, Florida, this 11th day of August, 2017.