# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 5D2024-0114
LT Case No. 2020-10637-CIDL

———————————————

ELIZABETH MOORE, as PERSONAL
REPRESENTATIVE OF THE ESTATE
OF DONNA MARIE REID,

      Appellant,

      v.

FRANK W. TOUB, M.D.,
ADVENTIST HEALTH SYSTEM,
INC., D/B/A FLORIDA HOSPITAL
NEW SMYRNA BEACH, and
FLORIDA HOSPITAL HEALTHCARE
PARTNERS, INC.,

      Appellees.

———————————————

On appeal from the Circuit Court for Volusia County.
Michael Scott Orfinger, Judge.

Andres I. Beregovich, of The Beregovich Law Firm, P.A.,
Orlando, for Appellant.

Dinah Stein, and Lindsey A. Hicks, of Hicks, Porter, Ebenfeld
& Stein, P.A., Miami, and John W. Bocchino and Travis A.
Edmands, of Beytin, McLaughlin, McLaughlin, O'Hara &
Bocchino, P.A., Maitland, for Appellees.

December 27, 2024

HARRIS, J.

Appellant, Elizabeth Moore as personal representative for the Estate of Donna Marie Reid, appeals the trial court's summary final judgment entered in favor of Appellee, Adventist Health System/Sunbelt, Inc. d/b/a Florida Hospital New Smyrna Beach ("Florida Hospital"). She argues she presented sufficient evidence for a jury to reasonably infer that an agency relationship existed between Florida Hospital and Dr. Frank W. Toub, M.D., a licensed medical doctor specializing in general surgery. Because the trial court did not err, we affirm.

On September 27, 2018, Donna Marie Reid underwent elective abdominal surgery performed by Dr. Toub. Following her surgery, Reid developed abdominal pain, abdominal distention, hypotension, and shortness of breath. Imaging revealed a large amount of free air in her abdomen, and she was moved to ICU as a result of her worsening condition. A few days later, Reid underwent an exploratory surgery of her abdomen performed by Donna Gill, M.D., in which Dr. Gill found seven or eight holes in Reid's small bowel. Following the exploratory surgery, Reid suffered complications and required a second surgery with Dr. Gill. Reid subsequently spent several months in the hospital and in a rehabilitation facility, and ultimately died on December 5, 2020.

On July 29, 2022, Appellant filed a second amended complaint alleging, as to Florida Hospital, vicarious liability based upon actual agency (count IV), vicarious liability based upon apparent agency (count V), and liability for Dr. Toub's negligence based on non-delegable duty (count VI).

Florida Hospital eventually moved for summary judgment as to each count against it. It argued that as to actual agency, there were no relevant contracts between Dr. Toub and Florida Hospital or any evidence that it entered into any agreement under which Dr. Toub was authorized to act on Florida Hospital's behalf or at its direction, nor was there evidence that Dr. Toub accepted any such undertaking. Rather, Dr. Toub was an employee of Florida Hospital Healthcare Partners, Inc. ("FHHP") and simply maintained medical staff privileges at Florida Hospital.

2

The trial court held a hearing on the motion for summary judgment, and after hearing argument of counsel, granted Florida Hospital's motion for summary final judgment. As to actual agency, it explained there was no contract or other employment relationship between Dr. Toub and Florida Hospital, nor was there evidence of an acknowledgement by Florida Hospital that Dr. Toub would act on its behalf when providing healthcare services to Reid or Dr. Toub's acceptance of any such undertaking. The contract between Dr. Toub and FHHP failed to demonstrate any such evidence, as it did not establish control by Florida Hospital over the actions of Dr. Toub.

As to apparent agency, the court likewise found the record was devoid of evidence of a representation made by Florida Hospital to Reid suggesting that Dr. Toub was its agent, or that Reid relied on any alleged representation. On the contrary, Reid chose Dr. Toub as her surgeon before ever presenting to the hospital for her surgery, with no input or representation from Florida Hospital. As to non-delegable duty, the court found Appellant failed to cite to any statute or regulation to support this theory of liability, and that the employment agreement between Dr. Toub and FHHP also did not establish a contractual non-delegable duty on part of Florida Hospital. We conclude that summary final judgment was appropriately entered.

This Court reviews de novo a trial court's order granting summary judgment. *See Duran v. Crab Shack Acq., FL, LLC*, 384 So. 3d 821, 823 (Fla. 5th DCA 2024). "To be entitled to summary judgment, a movant must show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* at 824 (quoting Fla. R. Civ. P. 1.510(a)). "[A] genuine dispute occurs when the evidence would allow a reasonable jury to return a verdict for [the non-moving] party." *Id.* (quoting *Welch v. CHLN, Inc.*, 357 So. 3d 1277, 1278 (Fla. 5th DCA 2023)). The trial court must view the evidence in a light most favorable to the non-moving party. *See id.*

Generally, a hospital will not be liable for the negligence of a physician working in the hospital as an independent contractor or where the independent physician is merely granted staff privileges. *See Shands Teaching Hosp. & Clinic, Inc. v. Juliana*,

3

863 So. 2d 343, 349 (Fla. 1st DCA 2003); *Stone v. Palms W. Hosp.*, 941 So. 2d 514, 519 (Fla. 4th DCA 2006). However, liability may attach if the physician is an actual or apparent agent of the hospital. *See Gradia v. Baptist Hosp., Inc.*, 345 So. 3d 385, 387 (Fla. 1st DCA 2022). On appeal, Appellant only challenges the court's ruling as to an actual agency relationship. "The essential elements of an actual agency relationship are: 1) acknowledgement by the principal that the agent will act for him or her, 2) the agent's acceptance of the undertaking, and 3) control by the principal over the actions of the agent." *Font v. Stanley Steemer Int'l, Inc.*, 849 So. 2d 1214, 1216 (Fla. 5th DCA 2003).

Under an agency theory, "'the right of control rather than the relationship between the parties' determines whether an agency relationship exists." *Gradia*, 345 So. 3d at 387 (quoting *Ops. Mgmt. Int'l v. Johnson*, 294 So. 3d 1005, 1007 (Fla. 1st DCA 2020)); *see also Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 853 (Fla. 2003) ("[I]t is the right to control, rather than actual control, that may be determinative."). "If the employer's right to control the activities of an employee extends to the manner in which a task is to be performed, then the employee is not an independent contractor." *Font*, 849 So. 2d at 1216 (quoting *Parker v. Domino's Pizza, Inc.*, 629 So. 2d 1026, 1027 (Fla. 4th DCA 1993)); *see also Ortega v. Gen. Motors Corp.*, 392 So. 2d 40, 41 (Fla. 4th DCA 1980) (explaining where employee is merely subject to direction of employer as to *result* to be procured, he is an independent contractor, but if employee is subject to control of employer as to the *means* to be used, he is an agent).

Courts first look to the parties' written contract to resolve right of control issues. *See Gradia*, 345 So. 3d at 387. While normally the issue of the existence of an agency relationship is one for the trier of fact to decide, it may be resolved by summary judgment "where the evidence is capable of but one determination and there is no evidentiary question for the jury to resolve." *Font*, 849 So. 2d at 1216. "The party alleging the agency relationship bears the burden of proving it." *Id.* "Summary judgment is not appropriate when 'there are provisions in the contract that support the principle of agency.'" *Gradia*, 345 So. 3d at 387 (quoting *Ops. Mgmt. Int'l*, 294 So. 3d at 1007).

In *Gradia*, the First District detailed the type of control that created a genuine issue of material fact as to whether an actual agency relationship existed between a hospital and a physician's employer. There, medical negligence allegations were made against Baptist Hospital for emergency room care that allegedly caused the patient to experience permanent brain damage. 345 So. 3d at 386. The trial court granted summary judgment in the hospital's favor, finding the hospital could not be vicariously liable for the care rendered in its emergency room because an independent contractor, Pensacola Emergency Physicians, LLC ("PEP"), operated the emergency department and employed the treating physician. *Id.* However, the First District reversed based on provisions of the agreement between the hospital and PEP, which gave the hospital "ultimate control over emergency department personnel and the methods and practices employed by emergency room physicians." *Id.* at 388.

Here, however, Appellant fails to establish a comparable level of control by Florida Hospital. As support for her argument that Dr. Toub was an actual agent of Florida Hospital, Appellant only provided as evidence the employment agreement between Dr. Toub and FHHP. She did not produce an agreement between Florida Hospital and FHHP nor any other evidence of Florida Hospital's acknowledgement that Dr. Toub would act on its behalf or Dr. Toub's acceptance of such undertaking. Notably, the only parties to the employment agreement are FHHP and Dr. Toub; Florida Hospital is not a signatory to the contract, nor is it explicitly referenced in the agreement by name.

Per the employment agreement, FHHP, not Florida Hospital, would provide professional liability coverage, indemnify and defend Dr. Toub against claims, and bill patients, among other various responsibilities. There is no indication in the agreement that Florida Hospital had a hand in the selecting or hiring of FHHP's physicians. *See DeRosa v. Shands Teaching Hosp. & Clinics, Inc.*, 504 So. 2d 1313, 1315 (Fla. 1st DCA 1987) (explaining factors to consider in determining existence of employer/employee-agent relationship are the selection and engagement of the employee, the payment of wages, the power of dismissal, and the right of control over conduct); *cf. Gradia*, 345 So. 3d at 388 (noting agreement places final physician-hiring authority in hands of

5

hospital and hospital retained ultimate right to grant or refuse admission of physician to membership rights). While the employment agreement does include provisions that Dr. Toub shall adhere to hospital policies, procedures, and rules of conduct, the agreement does not contain provisions regarding the hospital's authority, control, or responsibility over matters relating to the operation of Dr. Toub's medical services or his employment, including certain protocols or guidelines to be used in rendering such services. *Cf. Gradia*, 345 So. 3d at 388. In fact, the agreement provides that the hospital shall not "exercise control over [Dr. Toub] in [his] practice of medicine or treatment of Hospital patients."

Appellant relies on section 1.3.4.1, the "Patients" paragraph contained in the "Practice" subsection of the agreement, providing that Dr. Toub "shall treat all patients as determined by Hospital," that the hospital "reserves the right to determine who will be accepted as a patient," and that Dr. Toub could not deny services to a patient based on race, age, etc., unless certain exceptions applied, to argue that Dr. Toub "does not determine his nor choose[s] his patients . . . but that the hospital chooses the patients." However, this provision does not require Dr. Toub to receive permission from Florida Hospital regarding who to treat nor does it give Florida Hospital the ability to control the means by which medical services are rendered by Dr. Toub to patients.

This provision rather informs Dr. Toub that Florida Hospital reserves the ability to admit or not admit patients into its facility. There is also no record evidence that Dr. Toub needed or received Florida Hospital's permission to perform the surgery on Reid, and, according to Dr. Toub's and Reid's depositions, Reid had been a patient of Dr. Toub for many years prior to the surgery at issue and prior to the execution of the employment agreement.

Although Appellant argues that the agreement requires Florida Hospital to provide various supplies and an office space to Dr. Toub, the agreement actually states that it is FHHP's responsibility to ensure that such services are provided to Dr. Toub by the hospital. Moreover, a hospital's granting of staff privileges, without more, is insufficient to create a jury question on whether a healthcare provider was acting as an agent of a hospital. *See*

6

*Stone*, 941 So. 2d at 519; *Jones v. Tallahassee Mem'l Reg'l Healthcare, Inc.*, 923 So. 2d 1245, 1247 (Fla. 1st DCA 2006). The "Customer Service Pledge" that Dr. Toub signed was general customer service, code of conduct, and etiquette practices, such as dress code, rather than standards or procedures for his method of treatment or employment, and the agreement explained that such policies were adopted to support the overall Adventist Health System mission, which the hospital and FHHP were "affiliated with." *Cf. Stoll v. Noel*, 694 So. 2d 701, 703 (Fla. 1997).

Accordingly, Appellant has failed to provide sufficient evidence to establish a genuine dispute of material fact as to whether Dr. Toub was an actual agent of Florida Hospital when he performed Reid's surgery. The employment agreement between FHHP and Dr. Toub was insufficient to establish that Florida Hospital acknowledged Dr. Toub would act for it, that Dr. Toub accepted that undertaking, or that Florida Hospital had the right to control Dr. Toub's conduct or healthcare services provided to Reid. The trial court therefore properly granted summary judgment on this issue.

AFFIRMED.

EDWARDS, C.J., and SOUD, J., concur.

――――――――――――――――

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

――――――――――――――――

7